### JAKE BROD v. THE STATE.

#### No. 3772. Decided November 10, 1915.

**1.—Murder—Evidence—Declarations of Third Party Not Res Gestae.**

Upon trial of murder, the court committed reversible error in admitting testimony that shortly after the shooting of the deceased, and after the parties fighting had all been separated, that the father of defendant cursed and very violently abused one of the parties in the difficulty. This was not res gestae.

**2.—Same—Argument of Counsel.**

Where, upon trial of murder, State's counsel got outside of the record in his argument, and injected new and prejudicial matter into the case, and the court refused to withdraw same from the jury, as requested, the same was reversible error.

**3.—Same—Charge of Court—Standpoint of the Defendant—Self-defense.**

Where, upon trial of murder, the court's charge on self-defense was too restrictive, and did not properly instruct the jury, that they must view the circumstances as they appeared to the defendant at the time, the same was reversible error.

Appeal from the District Court of Austin. Tried below before the Hon. Frank S. Roberts.

Appeal from a conviction of murder; penalty, fifteen years confinement in the penitentiary.

The opinion states the case.

*A. G. Lipscomb, J. E. Edmundson,* and *Mathis, Teague & Embrey,* for appellant.—On question of admitting declarations of third parties: Cooper v. State, 23 Texas, 331; Dill v. State, 7 Texas Crim. App., 193.

On question of court's charge on self-defense: Mahew v. State, 144 S. W. Rep., 230; Rice v. State, 51 Texas Crim. Rep., 255; Terrell v. State, 53 id., 604; Hightower v. State, 56 id., 248; Ward v. State, 159 S. W. Rep., 272.

On question of argument of counsel: Doris v. State, 54 Texas Crim. Rep., 250; Smith v. State, 55 id., 563; McKinley v. State, 52 id., 182; Smith v. State, 44 id., 137.

*C. C. McDonald,* Assistant Attorney General, for the State.

HARPER, JUDGE.—Appellant was convicted of murder and his punishment assessed at fifteen years confinement in the State penitentiary.

It appears there had been a game of baseball in the afternoon; that the shooting took place at night. The State's contention is that appellant had become dissatisfied with the management of the baseball team, and had sought to break it up. Deceased, Gus Ueckert, was also a member of the team, and ill-will existed between Ueckert and appellant growing out of this matter. After the game of ball, a dance was had that night on a platform adjacent to a beer garden, and appellant and deceased were both at this dance, and the State's evidence is that, while deceased, Ed Ueckert, and Roman Michalski were drinking soda water,

appellant approached them and said, "You want to fight, you G—d
·d—n bastard?" when deceased replied, "Jake, I don't want to have
anything to do with you"; when, with a knife in his hand, he approached
deceased and said, "You G—d d—n s—n of a b—h"; Ed Ueckert here
interfered and carried appellant to his father, Anton Brod (who was
·constable of the precinct) and asked him to make appellant behave.
Appellant's father said something to his son about behaving, but almost
immediately went to where deceased was standing, caught him in the
collar and said, "I am tired of you calling my boy s—ns of b—hes—I
·didn't raise no s—n of a b—h, G—d d—n you." · Deceased replied,
"Mr. Brod, don't hit me." Anton Brod responded, "I will, G—d d—n
you," pulling his pistol. As he pulled his pistol, Ed Ueckert grabbed
his arm, and Anton Brod and Ed Ueckert went down, Ed Ueckert
falling on his face, but having the hand with the pistol under him,
Anton Brod being at his side and over him. Michalski and Gus Ueckert
caught hold of Anton Brod, as they say, to pull him off and prevent
him shooting. Appellant, Jake Brod, rushed up and cut Gus Ueckert
in the shoulder with a knife, retreating after he had done so. Gus
Ueckert grabbed a soda water bottle and threw it at Jake Brod, when
Jake Brod drew a pistol and shot him, inflicting a fatal wound.

The defendant's contention is that deceased had been writing letters
to a young lady in the community and receiving letters from her, the
letters to deceased being sent to appellant for delivery. Deceased's wife
hearing of those letters, deceased accused appellant of informing his
wife, and he gives this as a reason for their ill-will. The defendant's
contention is that no words passed between him and deceased on the
night of the shooting, and that between 11 and 12 o'clock, his father,
Anton Brod, came to where he was standing and said, "Come on, Jake,
let's go home," when Gus Ueckert, deceased, remarked, "You's better
take the s—n of a b—h home, else I will kill him." Then Anton Brod
turned and said to deceased, "You can kill hell," when deceased picked
up a beer glass and drew it back as if to strike, when Anton Brod
caught deceased's hand with one of his hands and pulled his pistol with
the other. As he pulled his pistol, Ed Ueckert grabbed the hand with
the pistol in it, and Anton Brod and Ed Ueckert went down, Ed
Ueckert having the hand with the pistol under him; that Gus Ueckert
then jumped on Anton Brod and struck him, when appellant rushed up
and cut Gus Ueckert. Gus Ueckert grabbed a bottle and threw it at
appellant, when, as appellant contends, Gus Ueckert drew a knife, got
on his father, Anton Brod, and began cutting at his father, when he,
appellant shot. As he shot, all parties parted, and Gus Ueckert, de-
ceased, went to his father-in-law's house, some hundred yards distant.

Thus, it is seen the evidence is in sharp conflict, both as to the origin
of the fatal difficulty and the events immediately preceding the shoot-
ing. There are a number of bills of exception in the record, but we do
not deem it necessary to discuss but three of them, as the others present
no error.

The first bill we will mention is the one wherein it is shown that

shortly after the shooting of Gus Ueckert by Jake Brod and after the parties fighting had all been separated, the State was permitted to show that Anton Brod, father of appellant, cursed and very violently abused Roman Michalski. This evidence seems to have been admitted on the ground that it occurred so soon after the difficulty in which appellant shot Gus Ueckert that it was res gestae of that transaction. If it was appellant doing the cursing and committing the acts towards Michalski, we would agree with the trial court, but Anton Brod was not on trial, and certainly appellant can not be held responsible for the acts of his father towards a third person after the difficulty in which he did the shooting was over. The acts and conduct of appellant might throw light on his previous acts, but the acts and conduct of his father could not do so. We are of the opinion that the court should have sustained the objection to the acts and conduct of appellant's father toward Roman Michalski after the shooting was over.

In another bill it is shown that Mr. Mathis, attorney for defendant, had commented on the fact that the record disclosed that the State had had the venue of this case changed from Waller to Austin County, and remarked that this was not fair to defendant—that he should have been tried in Waller County, where both appellant and deceased had been raised. As the record had been introduced showing the change of venue to have been made, appellant's counsel could comment on that evidence, and State's counsel could also reply to such argument and comment on any fact in evidence, but State's counsel should not have been permitted to go outside of the record, and say "that the reason why the same was changed was that Waller County had a history, and that was they would turn murderers loose over there." There was no evidence in the record upon which to base such statement. Again, State's counsel said in commenting on the testimony of Anton Brod, "That old man Brod went over to Richmond to help get a murderer out." Anton Brod testified to material facts for appellant, and, if his testimony was true, it would tend to show that appellant killed deceased to save his, Anton Brod's life. Upon objection being made, the court instructed the jury not to consider the last remark, but refused to instruct the jury not to consider the remark about the history of Waller County stating they turned murderers loose over there. Counsel for the State may always comment on the testimony and draw legitimate deductions therefrom, but in their zeal they should not get outside the record and inject new and prejudicial matter into the case.

The only other bill we deem it necessary to discuss is the one complaining of the charge of the court in instructing the jury: "The resistance which the person about to be injured may make to prevent the commission of the offense must be proportioned to the injury about to be inflicted. It must be only such as is necessary to repel the aggressor. If the person about to be injured uses a greater amount of force to resist such injury than is necessary to repel the aggressor and protect his own person, he is himself guilty of an illegal act, according to the nature and degree of force which he has used, but in all cases the

matter is to be viewed from the defendant's standpoint. Any person, other than the party about to be injured, may also, by the use of necessary means, prevent the commission of the offense, and the same rules which regulate the conduct of the person to be injured in repelling the aggression, are also applicable to the conduct of him who interferes in behalf of such person. He may use a degree of force proportionate to the injury about to be inflicted, and no greater." It is contended that this is too much limitation to place upon appellant's right of self-defense. It is the law of this State that one who seeks to justify his act on the ground that he committed the act in defense of another (in this instance in defense of his father) can use no greater force than seems to him necessary to accomplish that purpose. If Anton Brod was in no danger of losing his life or suffering serious bodily injury, appellant would have no right to kill in his defense. He would only have the right to use such force as was necessary to repel the aggressive act, or acts. According to the State's evidence, Anton Brod was in no danger of death or suffering serious bodily injury. Ed Ueckert grabbed the hand in which Anton Brod had the pistol to keep him from shooting his brother; and the acts and conduct of Gus Ueckert and the others were done to keep Anton Brod from injuring Ed Ueckert after he had gotten him down, thus authorizing a finding by the jury that Anton Brod was in no danger at the time the fatal shot was fired, and from the verdict they evidently so found. While this is the law, yet it is also the law that a jury must view the circumstances as it appeared to appellant at the time. Not that they must accept his version, but they must take all the evidence and pass on the question of how it then, at the time of the difficulty, would appear to a reasonable person situate as was appellant. If from all the facts and circumstances it reasonably appeared to appellant that deceased was on his father cutting at him with a knife, thereby endangering the life of his father, he would be justified in slaying to save the life of his father. The charge as given herein, we think, is too restrictive, and should be so drawn on another trial as to present clearly that, if it reasonably appeared to defendant at the time he shot that the life of his father was in danger, or he was in danger of suffering serious bodily injury, he would be guilty of no offense. And this question should not be passed on as it appeared to the jury from the evidence, but as the jury believed it appeared to defendant at the time he acted.

The case is reversed and the cause remanded.

*Reversed and remanded.*