GEORGE W. RIDDLE V. THE STATE.

No. 10415.   Delivered February 2, 1927.

Rehearing denied State, March 16, 1927.

1.—Receiving Deposits in Insolvent Bank—Prima Facie Evidence—Statute Construed.

Appellant was convicted for receiving a deposit of money in an insolvent bank. Our statute declares that "the failure of the bank shall be *prima facie evidence* of knowledge on the part of the owner thereof, that the same was insolvent, or in failing circumstances when the money was received on deposit."

2.—Same—Continued.

Prima facie evidence is merely proof of the case, upon which the jury may find a verdict, unless rebutted by other evidence. In other words, prima facie evidence is not conclusive, but such as may be overcome by evidence to the contrary, and such evidence is to be weighed together with the other evidence, and in connection with the reasonable doubt, and presumption of innocence, which obtains in all criminal trials." See Floeck v. State, 34 Tex. Crim. Rep. 314.

3.—Same—Continued.

Where the state relied solely upon the statutory declaration "that the failure of the bank shall be *prima facie evidence,* etc.," and the appellant introduced testimony of a very conclusive character that the bank was not insolvent at the time the deposit was made, corroborated by the books and documents of the bank, this court, in the performance of its duty and in the premises, must express the opinion that the evidence controverting the prima facie case, was such as should have impelled the learned trial judge to grant him a new trial.

4.—Same—Evidence—Improperly Admitted.

There was error in permitting the state to prove by a very old and decrepid man, who was a depositor in appellant's bank, that subsequent to its failure he went to appellant at his home in Dallas and appealed to him to restore to him his money, and that appellant failed to do so. This testimony had no relevancy upon the issues in the case, namely, the insolvency of the bank at the time of the failure, and the appellant's knowledge of it, and should have been excluded.

ON REHEARING BY STATE.

5.—Same—Evidence—Held Insufficient.

The matter raised in the state's motion for a rehearing were, we think, correctly disposed of in the original opinion. The prima facie proof of knowledge of insolvency of the bank, resulting solely from the statutory enactment above quoted, was overthrown, and the state's case, both from the standpoint of proof of insolvency and knowledge thereof, failed.

Appeal from the Criminal District Court No. 2 of Dallas County. Tried below before the Hon. C. A. Pippen, Judge.

Appeal from a conviction for receiving a deposit of money in an insolvent bank, penalty two years in the penitentiary.

The opinion states the case.

*Thomas, Frank, Milam & Touchstone,* and *Allen, Calloway & Allen* of Dallas, for appellant.

*Frank Wilson,* Special Prosecutor; *Sam D. Stinson,* State's Attorney, and *Robert M. Lyles,* Assistant State's Attorney, for the State.

MORROW, PRESIDING JUDGE.— The offense is unlawfully receiving a deposit of money in an insolvent bank, punishment fixed at confinement in the penitentiary for a period of two years.

The specific averment is that on the 18th day of May, 1925, the appellant, being the owner of a bank which was insolvent and in failing circumstances which was known to him, received a deposit of $64.65 made by J. E. Smith in a private bank known as the Riddle Banking Company, situated at Farmers Branch, Dallas County, Texas. The deposit mentioned was made by Smith during banking hours on the 18th of May. The bank closed at the usual hour and did not open on the following day. On the morning of the 19th of May the assets of the bank and of other banks of which the appellant was the owner and of his effects, save his exempt property, were placed in the hands of receivers, where such property remained at the time of the trial. The bank at Farmers Branch was conducted by one Justice and the deposit was received by him. The appellant had no active or personal connection with the management and had no actual knowledge of the receipt of the deposit. He did not reside at Farmers Branch but lived in the city of Dallas.

The state proved by Mrs. Gravely that she was a depositor in the Riddle Banking Company at Farmers Branch; that on the first and second days of May, 1925, she issued checks against

her deposit; that she had not received the money which had been deposited; that the money was deposited in the name of Taliaferro & Son, and had never been received from the bank mentioned.

It was proved by the witness Jordan that he was a depositor and that he had failed to receive the money which had been deposited in the bank. Upon this testimony the state rested its case.

The appellant introduced many witnesses to support his good reputation as a man of honesty and fair dealing, as a law-abiding citizen, and for truth and veracity. He also introduced testimony going to show that he had been a man of very large affairs but had suffered reverses owing to various causes; that for several years he had been in bad health which incapacitated him for the conduct of active business. It was shown that in addition to the bank at Farmers Branch, appellant owned a bank at Garza and one at Vickery, both of which ceased to do business on the same day as the bank at Farmers Branch. It was also shown that he had formerly owned a bank at Duncanville, which he had sold to a man by the name of Cupp some three months before the transaction in question, which bank had closed a short time before the 18th of May; that after that bank was closed an unsuccessful effort had been made to hold the appellant responsible for its liabilities. It was the appellant's position that the Duncanville bank was solvent at the time it was sold but that it had been looted by the purchaser.

As we understand the record, there were two successive receivers, namely, Richardson and Allen. Neither of them testified, but the witness Kerns, who was an accountant and auditor of Allen, gave testimony upon behalf of the appellant which was in substance that the assets of the three banks mentioned. namely, that at Farmers Branch, at Garza and at Vickery, together with the effects of the appellant, save his exempt property, were taken in possession by the receivers on the 19th of May; that they were audited by the witness; that the list of assets and liabilities had been prepared by him in duplicate and given to the attorneys for the state and for the appellant. According to the witness, the face value of these assets was $131,064.77, and the liabilities were $99,521.70. These items, however, related only to the assets of the banks mentioned, but did not include the effects of the appellant, which were turned over to the receivers and which were not in any way connected with the banks. As the witness is understood, his testimony reveals that the assets of the bank at Farmers Branch consisted of $3,130 in

money, $2,000 in bank credits, $4,600 in stocks and bonds, about $7,500 in bank equipment, and the remainder in bills receivable, these assets exceeding the liabilities by about $18,000. The bank at Garza and that at Vickery each, according to the witness, had assets of the same nature as those mentioned above, including some $3,800 in money, bringing the total excess of assets over liabilities to something over $30,000. The bills receivable uncollected at the time of the trial are not disclosed. It is stated, however, that the assets since the banks closed, had been handled by the receivers and that the notes on hand at the time of the trial were, according to the best judgment of the witness, worth seventy-five per cent of their face value; that he did not know their value at the time the banks closed. There were some checks introduced which had been drawn by the appellant upon his bank at Vickery and also the Garza bank, in each of which a sum of money was withdrawn. These banks were conducted, as was the bank at Farmers Branch, by an employee of the appellant.

The appellant was about sixty-five years of age, had held various positions of trust, and had been a man of large business affairs. According to his testimony, in the year 1920 he possessed an estate of several hundred thousand dollars which, in May, 1925, had been depleted by losses and reverses until its value was $70,000 or $75,000. He testified that the assets of his banks at the time they were closed were shown by the books to be the sum of $38,000 in excess of liabilities; that he regarded the banks as solvent, but closed them owing to various matters, including losses of credit by the failure of the Duncanville bank in which he had no interest but in which he had been previously connected; that things "were going wrong" with him; that he thought it due to his depositors that the bank be closed though he did not regard it as insolvent. There was testimony that on the day on which the bank at Farmers Branch had closed there were withdrawals by some of the depositors of which the appellant had no actual knowledge.

According to the bills of exceptions approved by the learned trial judge and the charge of the court, it appears that the state relied upon the evidence adduced by it, related above, and the statutory declaration that "the failure of the bank shall be *prima facie evidence* of the knowledge on the part of the owner thereof that the same was insolvent or in failing circumstances when the money was received on deposit."

" 'Prima facie' evidence is merely proof of the case upon which the jury may find a verdict, unless rebutted by other evi-

dence. In other words, prima facie evidence is not conclusive, but such as may be overcome by evidence to the contrary; and such evidence to be weighed together with the other evidence, and in connection with the reasonable doubt and presumption of innocence which obtains in all criminal trials." (Flœck v. State, 34 Tex. Crim. Rep. 314.)

See also Stoneham v. State, 268 S. W. 156; Amer. Law Rep., Vol. 31, p. 1212.

"Making out a prima facie case does not change the burden of proof. This is only the result of that amount of evidence which is sufficient to counter-balance the general presumption of innocence, and warrant a conviction, if the fact so established be not encountered and controlled by other evidence tending to modify its effect, or so to explain it as to render the statutory inference from it too uncertain and improbable to be relied upon." (Floeck v. State, 34 Tex. Crim. Rep. 321.)

To meet and overcome a prima facie case resulting from the closing of a bank, the record presents a specific evidence of the condition of the several banks owned by the appellant, particularly of the bank at Farmers Branch, by the testimony of the witness Kerns. Allen (Kerns' employer) was in possession of the assets of the banks, including the books showing the condition of the banks, the nature and amount of the assets of each of them at the time of the failure. According to his testimony, Kerns had made a written statement listing the assets, a copy of which statement was in possession of the attorneys for both the state and the appellant. The books of each of the banks, according to Kerns, showed assets in excess of their liabilities, and, according to his testimony, at the time of the trial the assets were of a value equal to or exceeding the liabilities of the several banks, but he did not know their value at the time the banks were closed. The accuracy of Kerns' testimony in the preparation of the list of assets reporting the condition of the books of the several banks is not questioned or controverted, nor is his estimate of the value of the assets. There is no suggestion of false entries in any of the books, and in the absence of any testimony challenging the correctness of the statement of Kerns touching the condition of the books and the assets, no basis is perceived for discrediting his statement. He does not appear to have been interested. He gave the names of other persons, namely, Allen and Richardson, the receivers, by whom, if Kerns' statement was not accurate, it might have been controverted. There was no evidence adduced that the notes or bills receivable were not genuine or were not signed by solvent persons. The state, having a list

of them and access to the books and documents, failed to call any witnesses to discredit them or to show that at the time of the failure, they were not worth their face value, or to introduce the books in evidence. The law required and the court instructed the jury that to warrant a conviction the evidence must show that the bank was insolvent and that the appellant knew it, that is, that the bank nor the appellant had sufficient assets to discharge the debts. Fleming v. State, 62 Tex. Crim. Rep. 653. It was not in dispute that the appellant was in bad health and not active in the management of the banks. There is nothing to indicate that an examination of the bank books by him would have revealed the insolvency of the banks. He explained the closing of the banks by the statement that his credit had been impaired by the unsuccessful proceeding against him due to the failure of the Duncanville bank, which he had previously sold and which, according to his testimony, had been rendered insolvent through its looting by the person to whom it had been sold. Under the law of this state, the credibility of the witnesses and the weight of their testimony rests exclusively with the jury. In the present case, however, the witnesses did not testify either to facts specifically showing the insolvency of the banks or apparent knowledge thereof, but reliance is had upon the declaration of the statute that a bank having closed, that fact prima facie made out the state's case. Such was the effect of the statute. The evidence mentioned was sufficient to overcome the presumption of innocence, and if there was any basis for discrediting the testimony of the witness Kerns, this court might not be authorized to disturb their verdict giving effect to the prima facie evidence of guilt. From the case of Satterwhite v. State, 6 Tex. Crim. App. 614, the following quotation is taken:

"From the fact that a witness is unimpeached and uncontradicted, it does not follow that the jury are necessarily bound to believe his evidence and take it as true. There is no such positive rule; no more than that they must reject his testimony, if evidence has been offered to impeach him. The question of credibility, under all the testimony and surrounding indications, judging from mode and manner of testifying, the probability or improbability of the statements, is for the jury; though they are not to reject or disregard a witness arbitrarily, and especially so in those cases where his testimony is sustained by the corroborative evidence of circumstances and of other witnesses. And, 'while they may judge of the credibility of a witness, they must exercise judgment, and not will merely, in doing so'."

This announcement is in harmony with the rule announced by

courts and text-writers.    See Ruling Case Law, Vol. 28, p. 660, Sec. 245; Hawkins v. State, 99 Tex. Crim. Rep. 571.

In the present case it is the duty of this court to determine whether in deciding that the prima facie case was not over-come, the jury exercised *judgment,* and did not *arbitrarily* dis-regard the evidence before them by a disinterested and unim-peached witness, whose testimony was not improbable and not in conflict with other evidence, and who accompanied his testi-mony with data and documents which, in the absence of evi-dence to the contrary, should be regarded as corroborative of his statement.    This court, in the performance of its duty in the premises, must express the opinion that the evidence controvert-ing the prima facie case was such as should have impelled the learned trial judge to grant a new trial.

In one of the bill of exceptions, it is made to appear that the witness Jordan was a depositor in the bank at Farmers Branch; that some time subsequent to its failure he had a conversation with the appellant and made statements to the introduction of which in evidence the appellant objected.    The witness, who was above eighty years of age, said:

"Yes, sir, after the bank closed on May 18 I did go and talk to the defendant, G. W. Riddle.    I went to his house to see him. I went to see him twice.    Yes, I had a conversation with him the first time I went to see him.    Well, I went to him and told him I was   poor and old and had no money, and that he had my money, and that I would like for him to let me have some money, and he said, 'Well, if I ever get so I can, I will.'    Well, I told him, I said: 'Judge, you left me with $2.00.',—that's what I said.    I says, 'If you will give me $250, I will square it off even with you.'    He then said he couldn't do anything.    That conversation was at his house."

It is made to appear from the bill that at the time of this conversation the appellant was not in control of either the effects of the bank or of his own property, both having gone into the possession of the receivers.    It put into the case, in our judg-ment, irrelevant testimony, the effect of which must of necessity have been prejudicial to the appellant.    We are unable to per-ceive what relevancy the pathetic condition in which the old man represented himself or his offer of settlement, or the appellant's refusal, had upon the issues in the case, namely the insolvency of the bank at the time of the failure and the appellant's knowl-edge of it.    The testimony mentioned should have been excluded.

There are some criticisms of the charge of the court and com-plaints of the misconduct of the jury.    Without discussing the

details, an examination of the court's charge in connection with the special charges which were given at the request of the appellant, leads us to the conclusion that the issues arising from the evidence were fairly and accurately presented to the jury. The alleged misconduct of the jury relates to a matter which will not arise upon another trial, and the discussion of it is therefore pretermitted.

The bills of exceptions which have not been discussed are not regarded as presenting error.

For the reasons pointed out, the judgment is reversed and the cause remanded.

*Reversed and remanded.*

### ON MOTION FOR REHEARING.

LATTIMORE, JUDGE.—A vigorous motion for rehearing has been filed by the special prosecutor assisting the state upon this trial. Each of the grounds set out in the motion has been carefully examined. It appears from the record herein that appellant was the owner of a number of private banks, and that on May 18, 1925, his bank at Farmers Branch received a deposit from J. E. Smith, and that its doors were closed that night. Appellant lived in Dallas. The bank in question was run by Mr. Justice, an employee of appellant, who received the deposit. No attempt is made by the state to show personal receipt of such deposit by appellant, or that appellant was in or around said bank on the date mentioned, or that he had personal knowledge of the failing condition of said bank. Reliance was had upon the legal proposition announced in the last paragraph of Art. 557, 1925 P. C., which reads as follows:

"The failure of any such bank or banking institution, or trust company or institution, shall be prima facie evidence of knowledge on the part of any such officer or person that the same was insolvent or in failing circumstances when the money or property was received on deposit."

The language used in the above is very indefinite as well as very comprehensive. We see no reason why, if same be given effect as written, upon the failure of a bank today, the owner could not be held to have knowledge of the insolvency of the bank upon the date of any deposit received since the bank came into existence. The attention of the legislature is called to this matter.

The matters raised in the state's motion were, we think, correctly disposed of in the original opinion. It appears to us that the prima facie proof of knowledge of insolvency of the bank

resulting solely from the statutory statement above quoted, was overthrown, and that the state's case, both from the standpoint of proof of insolvency and knowledge thereof, failed. The motion stresses the fact that three persons testified that they put money in the bank shortly before its doors were closed, and had not gotten same, and that checks given before the doors closed had not been paid. It was in evidence that the receiver who took charge of the bank the following day found more than three thousand dollars cash on hand. We fail to see the force of the contention made upon this point.

We see no good reason why we should rediscuss the matters set out at length in our former opinion. The state's motion consists only of statements and arguments going over the same matters analyzed and passed upon in the original opinion.

Believing the questions correctly disposed of, the state's motion for rehearing is overruled.

*Overruled.*