Esteban **VASQUEZ, Jr.,** Appellant,

v.

The **STATE** of Texas, Appellee.

No. 35443.

Court of Criminal Appeals of Texas.

March 20, 1963.

Rehearing Denied May 15, 1963.

Second Motion for Rehearing Denied
June 12, 1963.

Third Motion for Rehearing Denied
Oct. 16, 1963.

Aycock & Steinle, Jourdanton, for appellant.

J. Taylor Brite, Dist. Atty., Robert C. Koehl, County Atty., Jourdanton, and Leon B. Douglas, State's Atty., Austin, for the State.

McDONALD, Judge.

The offense is murder with malice; the punishment, confinement in the penitentiary for twenty years.

It is undisputed that on April 15, 1961, the appellant stabbed the deceased, Roger Alvarado, with a knife, and that Alvarado died as a result of those wounds.

The homicide was the termination of a series of minor fights and "fracases" between appellant and the deceased. Both parties were only sixteen years of age at the time of the offense and had been involved in three separate "bits of trouble" prior to the homicide. Appellant testified that the fight at school had begun by deceased coming up behind him and hitting him in the back; that it had stopped when a teacher approached; that after school that day he was walking home when deceased caught up with him and began the

fight anew. Raymond Contraras testified that he came upon this fight after it had started and that it appeared the deceased was the most angry and was pushing the fight. This affray ended when a neighbor threatened to call the police. Following this, several of deceased's friends and members of the same "gang," the "Road Devils," saw appellant walking along, and chased him. The deceased came up and they tried to get him and the appellant to fight but both refused. Then three weeks to a month before the homicide (one witness testified that it was the night preceding the homicide), appellant was at a dance when Rosendo Cruz and Roger tried to start a fight with him but he refused to fight.

The state's evidence showed that on the night of the homicide the appellant had been walking around a carnival for some time, when he met Sylvia Hernandez, a girl with whom the deceased had been going "steady." The two went on several rides, bought some popcorn, and were standing around talking, when the deceased, accompanied by Rosendo Cruz, came up. They talked for a minute; then the three boys left for the edge of the carnival grounds. Stopping behind a truck and an elephant ride, in a dimly lighted area, the two (appellant and deceased) faced each other.

Rosendo testified that the appellant then pulled out a "big knife" and tried to cut the deceased; that Roger (deceased) then picked up a stick from the ground and tried to defend himself; that appellant lunged again, and then fell; and that "Then he got up again and he went where Roger was again and he stuck the knife in him." Rosendo then saw appellant turn and run, and he (Rosendo) ran for help.

The sheriff and a Texas Ranger were called to the scene and found a crowd of people gathered around the boy's body. The appellant was there, held by Arturo Rodriguez. After being told that appellant was the one who did the stabbing, the two law-enforcement officers took him into custody and led him from the grounds.

The evidence reflects that they took him first to the hospital, where he was checked for injury, and then to the courthouse, where he gave two statements to the district attorney, admitting that he had stabbed the deceased. In the first statement he said he had thrown the knife away. It was later discovered that the appellant had walked about fifty feet from the scene of the crime and had given the knife to some friends before returning and surrendering himself. These facts were incorporated in the second statement. The knife was recovered and positively indentified as the murder weapon.

The appellant's version is considerably different from that developed by the state. He said that the deceased came up to him and said, "Let's go outside." Appellant asked, "What for?" and then told deceased to wait a minute, that he would be right back. But deceased persisted, so appellant said, "Okay, let's go." Upon arriving at the scene of the fight, he testified, Rosendo reached under his coat and pulled out something. Appellant then pulled out a knife, which he had previously borrowed from a friend, and stood his ground. He testified that the deceased then hit him on the forehead with a weighted "cue stick" (apparently passed by Rosendo to the deceased). He further testified:

> "Well, it sort of shook me up a little and then he was going to make another pass at me and that is when I sort of made a pass at him, so he wouldn't be too ambitious * * * and after he made another pass, I just ran, I didn't run, I moved forward like that and just sort of went with the knife like that. I didn't know I had stabbed him then but afterward I knew that I had stabbed him."

Several defense witnesses testified to seeing the fight, or parts of it, and that they saw the club used, and that the deceased had struck the first blows. One witness testified to hearing a sound which could have been produced by a blow from a club or a fist, at the time of the fight.

Alejandro Alvarado, one of these witnesses, testified that he had seen the same club in the hands of Pete Compas, another "Road Devil," earlier. And at the time of the fight, he testified, he had seen the club pass from Rosendo Cruz to the deceased. The witness further testified that after the fight:

"Then I didn't see who picked up the stick, but after that they wanted to give it to me."

The testimony continued:

["Q   Who wanted to give it to you?] A.   Lydia Rodriguez.

["Q   Did she say anything?]   A. Yes, she said, 'Lets give it to Polly,' that is *me*.

["Q   All right, then what happened?]   A.   Then Tony Rodriguez said, 'Don't give it to him because if the policemen come they're going to search him and find the stick on him, they're going to find the stick on him.

["Q   All right, so did Lydia keep the stick?]   A.   Yes.

\*     \*     \*     \*     \*     \*

"A.   She *sticked* it under her coat."

The appellant introduced a facsimile of the stock into evidence. None of the state's witnesses could remember seeing the club around the scene after the fight, and Lydia Rodriguez specifically denied that the transaction had occurred.

Much of the testimony was directed at determining who was at the scene of the fight and who saw it. The testimony varied from Rosendo Cruz's that he was the only witness, to that of Alejandro's that there were about fifteen boys pushing Roger and Esteban into the fight.

■   The conflicts in the testimony were resolved against the appellant, and we find the evidence sufficient to support the conviction.

Appellant has raised some eighteen points of error, all of which have been carefully reviewed.   We need discuss only five of these.

■   Appellant first complains of the admission of certain statements made by him at the scene of the crime and shortly after being taken away by the sheriff.   We need not determine whether these were admissible res gestae statements or not, or whether they were made while under arrest, since the same remarks were testified to by Ranger Zeno Smith, without objection. Davis v. State, 168 Tex.Cr.R. 588, 330 S.W.2d 443.

■   Error is next assigned for the failure of the court to require the district attorney to produce any written statements made by Rosendo Cruz for the purpose of cross-examination.   However, nowhere in the record is it shown that the witness gave any written statement, and therefore there can be no error.

■   After all the testimony was concluded, the appellant again requested any statements made by the witness Rosendo Cruz.   The district attorney at that time indicated that the only statement within his possession made by Cruz was a tape recording of his testimony before the grand jury.   The appellant then requested this *for the purpose of his bill*.   The court refused to order its production, and objection and exception were duly taken.   The request was made long after the witness had testified and left the stand.   No request was made for the witness's recall for cross-examination after the recording was discovered.

Appellant was not actually denied the use of the recording for purposes of cross-examination.   This was not requested.   He had not put the contents of the tape recording in issue.   No prior inconsistent statement was shown to have been made. The truth or falsity of the prior grand jury statement was not challenged or shown. In this state of the record, there was no error in refusing the appellant's request.

It did not impair his right of, or limit him in, his cross-examination.

■ In paragraph 13 of the charge given to the jury, the court defined the appellant's right of self-defense by saying that:

"A reasonable apprehension of death or great bodily harm will excuse a party in using all necessary force to protect his life or person * * *."

Appellant contends that the term "all necessary force" limited his right of self-defense to what the jury might think was "necessary" instead of being unqualified. However, in paragraph 14, where the court applied the facts of this case to the law of self-defense, the jury were told that they must review all the facts from the defendant's standpoint; that if the defendant had a reasonable fear or expectation of danger of losing his life or suffering serious bodily injury "at the hands of said Roger Alvarado either acting alone or in conjunction with Rosendo Cruz" and, acting under this danger, he killed the deceased, then "the defendant, under such circumstances, would have the right under the law to kill the said Roger Alvarado."

Looking at the entire charge, we fail to see any error. Davis v. State, 52 Tex.Cr. R. 149 106 S.W. 144; Spangler v. State, 42 Tex.Cr.R. 233, 61 S.W. 314 (reversed on other grounds). The intent is clear that the court meant "any necessary force," and was giving a definition within Art. 1222, Vernon's Ann.P.C., and not Art. 1224, Vernon's Ann.P.C. See: Ludwick v. State, 151 Tex.Cr.R. 623, 210 S.W.2d 589.

Appellant's eighth and ninth propositions concern questions asked by the district attorney, which it is claimed were calculated to prejudice appellant before the jury by showing or attempting to show his father's hostility towards peace officers. Appellant cites Brod v. State, 78 Tex.Cr.R. 69, 179 S.W. 1189, as authority for reversal on this point. In that case, the father and son had been mutually involved with the deceased before the homicide. The trial court permitted the state to show that the father, after the shooting, had cursed and committed acts against one of the people who had attempted to prevent the fight.

■ Here, we have the district attorney bringing out on cross-examination that the appellant's father had gone up to the sheriff and Ranger as they led the boy away and asked: "Where are you taking my boy?" The father was allowed to explain this remark by testifying that he was interested in where the officers were taking him and that he asked that the boy be taken first to the hospital to determine the extent of his injuries.

In light of the father's explanation, we fail to see how such testimony would be so prejudicial as to require a reversal.

■ On motion for new trial, the appellant presented the affidavits of two girls, alleging newly discovered evidence. One of the girls had testified before the grand jury and had sworn that she knew nothing of value concerning the incident. The other girl had talked to attorneys for both the appellant and the state and had denied knowledge beneficial to either. In their affidavits and in their testimony on the motion, they admitted the previous "lies" and indicated that they had seen parts of the fight. Their testimony was corroborative of the appellant and his witnesses. On cross-examination, the district attorney was able to get one of the girls to admit that a portion of her affidavit was untrue.

The only reason given for not coming forward at the time of trial was that one of the girls had been at the carnival with a boy of whom her father did not approve and that she feared he would learn of it if she went to court.

While it is true that the appellant's witnesses had been severely impeached, this testimony was primarily cumulative and, in the light of the admitted acts of perjury and falsehoods, we cannot say that the trial judge abused his discretion in overruling the motion for new trial. Smith v.

State, 166 Tex.Cr.R. 574, 316 S.W.2d 750; 1 Branch's 2d, Sec. 222, p. 255.

We are aware of the holding of this court in Anderson v. State, 93 Tex.Cr.R. 634, 248 S.W. 681, cited to us by appellant. The testimony, there, was conflicting only on the point of whether the injured party had a pistol. One of the affiants testified on the trial that he did have; the other denied knowledge of such fact. In their affidavits and testimony on the motion, both insisted that he had a pistol and recounted the facts leading up to the fight. Their "new" testimony was not controverted by the state, as in this case, and much of it appears to have been uncontradicted by the testimony adduced during the trial. In short, the "new" testimony was not primarily cumulative or impeaching as is the testimony in the case at bar. Thus, Anderson is not here controlling.

We have carefully reviewed the appellant's other contentions and, finding no reversible error and the evidence being sufficient, the judgment is affirmed.

## ON APPELLANT'S MOTION FOR REHEARING

BELCHER, Commissioner.

Appellant reurges that the evidence is insufficient to support the conviction. He insists that the cases of Villareal v. State, 140 Tex.Cr.R. 675, 146 S.W.2d 406, and Riddle v. State, 106 Tex.Cr.R. 269, 291 S.W. 910, require a reversal of this case.

In Villareal the death penalty was assessed for murder. To show malice the state's theory was that the accused stabbed the deceased while riding on horseback behind him and drug his body over hard ground to where it was found. The appellant testified that deceased was on top of him and choking him and he cut him to extricate himself from a death grip.

The doctor's conclusion of the position of the parties when the fatal wound was inflicted supported the state's theory and bore

on the vital issue to be decided by the jury and was inadmissible and called for reversal. Therefore the reversal in Villareal was on a ground not here presented.

The conviction in Riddle, supra, was for accepting a deposit in an insolvent bank. The state offered no direct evidence. The question was the validity of Art. 557 P.C. (since repealed) and whether the evidence offered by the defendant was sufficient to overcome the state's prima facie case under the statute. In the case at bar we have no such prima facie presumption, and, upon reexamination, we find the evidence sufficient to support the jury verdict.

Appellant's motion for rehearing is overruled.

Opinion approved by the Court.

## ON APPELLANT'S SECOND MOTION FOR REHEARING

MORRISON, Judge.

We were in error in our original opinion in stating that the evidence showed that one of the two alleged newly discovered witnesses had talked to both attorneys for the accused and the State. The record reflects only that she had talked to appellant's attorney. This does not, however, change our conclusion that reversible error is not reflected. The basic distinction between the case at bar and Anderson v. State, 93 Tex.Cr.R. 634, 248 S.W. 681, relied upon by appellant, is that in Anderson there was only one newly discovered witness called upon to testify and no question was raised as to her veracity, nor did her testimony conflict with what the other witness, who was not called, had said. Here we have two witnesses whose testimony on the motion for new trial varies in so many respects that the trial court might reasonably have concluded that neither was telling the truth.

Remaining convinced that we properly disposed of this cause originally, appellant's second motion for rehearing is overruled.