**James E. JOHNSON, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 39348.**

Court of Criminal Appeals of Texas.

March 16, 1966.

Rehearing Denied May 11, 1966.

---

William Goldapp, Houston, John R. Coe (on appeal only), Houston, for appellant.

Carol Vance, Dist. Atty., Edward B. McDonough, Jr., Asst. Dist. Atty., Houston, and Leon B. Douglas, State's Atty., Austin, for the State.

DICE, Commissioner.

The conviction is for murder with malice; the punishment, fifty years.

The state's testimony shows that the appellant and Alvin Green lived in a small house at 1012 Saulnier in the city of Houston. Appellant worked, and on the day of the killing, while he was away, Green and some others were drinking wine and beer at the house. Between four and five o'clock the deceased came by the house and, after having one drink, left. Shortly thereafter, the appellant returned home from work. He also had a drink and then went to bed. Around 10 p. m., the deceased returned to the house and knocked on the front door. After he identified himself, Green told him that everyone had gone to bed. The deceased replied that it did not make any difference and that he was coming in. Green continued to protest and the deceased lunged against the door, breaking the top hinges from the

wall, and came into the room. At this juncture, the appellant got out of bed and said to the deceased, " 'Man, it looks like you are trying to run over us.' " Green testified that the appellant walked toward the deceased, who ran his hand in his pocket, but that the witness did not see any kind of weapon. Appellant then stated, " 'Well, I got a remedy for this,' " and ran out the back door. Green stated that after he heard the cracking of a bottle outside, the deceased, who had been standing near the front door, "come back inside," bleeding, and said, " 'Look, you know Jim cut me.' " Green then advised him to go to the hospital and the deceased left through the back door.

It was shown that when the officers arrived upon the scene, the deceased was lying partially in the street and the driveway in front of the premises and there was a trail of blood leading from the body to the back door of the house and on through the house, stopping in the front doorway. The broken portion of a bottle which had stains of blood on the inside of the neck, about one-half inch from the broken edge, was found on the porch.

Dr. Joseph Alexander Jachimczyk, chief medical examiner of Harris County, who performed the autopsy on the deceased, testified that he found an irregular stab wound in the left shoulder area which was three and one-half inches to the left of the midline and just above the left clavicle or collarbone. The doctor stated that the wound measured one and one-half inches in length and gaped three-quarters of an inch and extended into the left armpit area to a depth of three inches, severing the left axillary vein and artery. The doctor stated that the wound described was the cause of death of the deceased. He further stated that the bottle found on the porch, if used by a person of the same size and physical description of appellant, could have produced death and that the bottle could have broken off during the stabbing. He also testified that it would

take considerable force to drive the jagged end of a bottle into a person like the deceased.

Testifying in his own behalf, appellant related that after the deceased forced his way into the house and there had been an exchange of words between them as to his entry, the deceased reached in his pocket and pulled out a knife; that the deceased then came toward him and he (appellant) ran out the back door. Appellant stated that when he got outside he picked up some pieces of glass in one hand and a soda water bottle in the other; that he ran through an alley and when he got to the front of the house the deceased was on the porch and reached out at him as if to cut him. Appellant stated that he then "ducked" and swung at the deceased and it felt "like I hit him in the shoulder." Appellant swore that he had no intention to kill the deceased, and testified that when he jabbed at the deceased he was in fear of his life.

The court submitted to the jury the issue of appellant's guilt of murder with and without malice and aggravated assault. The jury was further charged on the appellant's right of self-defense and the defense of habitation.

The jury, by their verdict, rejected appellant's defensive testimony.

Appellant's sole contention on appeal is that the evidence is, as a matter of law, insufficient to support a finding that he acted with malice aforethought.

The court, in defining malice and malice aforethought in the charge—to which no objection was made by appellant—instructed the jury as follows:

"Malice aforethought is a condition of the mind which shows a heart regardless of social duty and fatally bent on mischief, the existence of which is inferred from acts committed or words spoken.

"Malice aforethought is the voluntary and intentional doing of an unlawful act

with the intent, means and ability to accomplish the reasonable and probable consequences of the act done. It includes all those states of mind under which the killing of a person takes place without any cause which will in law justify or excuse the killing.

"Malice in its legal sense denotes a wrongful act done intentionally and without just cause or excuse."

We are unable to agree that, under the definition given by the court, the evidence presented by the state is insufficient to support a finding that in killing the deceased the appellant was actuated with malice aforethought.

Malice does not require any specific length of time for its germination or growth but it may be formed immediately before the act is committed, and can arise instantly. Haynes v. State, 167 Tex.Cr.R. 68, 317 S.W.2d 945.

In Pelton v. State, 167 Tex.Cr.R. 649, 322 S.W.2d 529, it was held that murder with malice could be predicated upon the kicking of the deceased around the head by the feet of the defendant. In Haynes v. State, supra, a conviction for murder with malice, where the accused killed the deceased by stabbing him with a knife, was affirmed by this court.

While there was no proof of any previous ill-feeling between appellant and the deceased, the evidence is undisputed that appellant stabbed and cut the deceased with a glass bottle, or piece of a bottle, in the vicinity of the collarbone, which severed the left axilary vein and artery. That the act was intentional is not disputed. The jury had the right to reject appellant's claim that he was acting in self-defense. The act was committed in such manner and under such circumstances that the death of the deceased did result.

We have examined the authorities cited by appellant and do not deem them here controlling, under the facts.

In Villareal v. State, 140 Tex.Cr.R. 675, 146 S.W.2d 406, the jury's verdict was, by necessity, based upon the testimony of a physician, which—though not objected to—was inadmissible. Under such record, this court reversed the death penalty conviction.

In Ely v. State, 139 Tex.Cr.R. 520, 141 S.W.2d 626, the accused, at the time of the killing, was under an illegal arrest by the deceased and had the right to extricate himself from such restraint.

In Parks v. State, 131 Tex.Cr.R. 464, 99 S.W.2d 943, the accused did not testify, and it was shown by the state's testimony that at the time of the shooting he was not in such condition that his mind was capable of cool reflection.

The judgment is affirmed.

Opinion approved by the court.