**Ricky Nolen McGINN, Appellant,**

v.

**STATE of Texas.**

No. 72134.

Court of Criminal Appeals of Texas, En Banc.

Jan. 21, 1998.

---

Joel Menachim Shearer, Bastrop, for appellant.

Lee Haney, Dist. Atty., Brownwood, Matthew Paul, State's Atty., Austin, for State.

## OPINION

KELLER, Judge, delivered the opinion of the Court with respect to points of error two through seven, in which McCORMICK, Presiding Judge, and MEYERS, MANSFIELD, PRICE, HOLLAND and WOMACK, Judges, joined and an opinion with respect to point of error one, in which McCORMICK, Presiding Judge, and MEYERS, PRICE and HOLLAND, Judges, joined.

In a trial beginning in May of 1995, appellant was convicted of the capital murder of twelve-year-old Stephanie Flanary committed on May 22, 1993 in Brown County. The jury answered the punishment issues in the State's favor, and appellant was sentenced to death. Direct appeal to this Court is automatic under Article 37.071, § 2(h).[1] Appellant raises seven points of error on appeal. We will affirm.

### 1. Venue

In point of error two, appellant complains about the trial court's refusal to grant a change of venue on the basis of prejudicial pretrial publicity. He complains that some newspaper articles about his case prejudiced his ability to obtain a fair trial by referring to a murder charge of which appellant was acquitted and by referring to the fairly recent murders of two other girls in Brown county.

The standard of review for a trial court's ruling on a request for change of venue is abuse of discretion. *Anderson v.*

1. All references to articles refer to the Texas Code of Criminal Procedure unless otherwise

*State,* 932 S.W.2d 502, 506 (Tex.Crim.App. 1996). We will not reverse so long as the trial court's ruling "is within the realm of reasonableness given the record before it." *Id.* To prevail on his request, appellant "bears a heavy burden to prove the existence of such prejudice in the community that the likelihood of obtaining a fair and impartial jury trial is doubtful." *Id.* (quoting *Narvaiz v. State,* 840 S.W.2d 415, 428 (Tex.Crim.App. 1992), *cert. denied,* 507 U.S. 975, 113 S.Ct. 1422, 122 L.Ed.2d 791 (1993)). The publicity involved must be "so pervasive and prejudicial as to create a reasonable probability that an impartial jury cannot be empaneled even with the most careful voir dire." *Id.* (quoting *Narvaiz* ). Moreover, that some members of the venire are challengeable for cause due to attitudes generated by publicity does not mean that an impartial jury cannot be empaneled. *Id.*

In the present case, appellant offered before the trial court the testimony of several witnesses, including a former District Attorney, who stated that there was a substantial risk that appellant could not receive a fair trial. The State controverted this testimony with witnesses who testified that appellant could receive a fair trial, and defense witnesses randomly selected to test whether a fair trial could occur also provided some testimonial support for the State's position. Although the basis for excusing a prospective juror was not always clear, we discern that at least seven prospective jurors were excused because they had formed opinions based upon publicity or information they received about the case. A number of others were excused because their relationship with a party, or a relative of one, had compromised their ability to be fair and impartial. Some of the prospective jurors in both categories had spontaneously offered their views at the hearing on jury qualifications. Finally, we note that appellant did not use all of his peremptory challenges.

Appellant concedes that no facts in the record can be offered to show that the trial court abused its discretion under current law.

indicated.

He candidly points to *Gardner v. State,* 733 S.W.2d 195 (Tex.Crim.App.1987) as being strikingly similar to his case and adverse to his position: fifteen prospective jurors were excused for holding established conclusions about the defendant's guilt, conflicting testimony was offered by the State and the defense on whether the defendant could obtain a fair trial, the publicity in the case was factual in nature, and the defendant had not exhausted his peremptory challenges. *Id.* at 204. We agree with appellant's assessment that the trial court did not abuse his discretion under the law as it currently stands.

■ Appellant contends, however, that we should depart from current law and engage in speculation about what the record might have shown. He claims that he could not ask questions designed to discover prospective jurors' knowledge and opinions about his prior murder charge and acquittal because doing so would have informed prospective jurors who did not already know about the prior charge —destroying any remaining chance of a fair trial. He argues that we should speculate that some members of the jury may have known about the prior charge and acquittal in light of the insular nature of a small town. We are not convinced.

In a number of recent cases, we have reaffirmed the principle that the record must show a defendant's inability to obtain a fair trial. *Moore v. State,* 935 S.W.2d 124, 129–30 (Tex.Crim.App.1996)(the defendant produced no evidence that any member of the venire harbored unshakable prejudices against him); *Penry v. State,* 903 S.W.2d 715, 727 (Tex. Crim.App.), *cert. denied,* 516 U.S. 977, 116 S.Ct. 480, 133 L.Ed.2d 408 (1995)(record must demonstrate prejudice in community making likelihood of obtaining a fair trial doubtful); *Willingham v. State,* 897 S.W.2d 351, 357 (Tex.Crim.App.1995)(nothing in record indicated identifiable prejudice in community); *Brimage v. State,* 918 S.W.2d 466, 509 (Tex.Crim.App.1994)(no evidence showed that media activity prejudiced any member of the jury against the defendant). We do not believe it necessary or appropriate to make an exception to this rule for small counties. If the requisite degree of prejudice is present, appellant should be able to demonstrate that fact on the record, regardless of the size of the locality involved. Moreover, appellant's claim that questioning about the prior murder accusation would taint the entire venire is untenable in light of the statutory scheme of *individual* voir dire for capital cases. Defense counsel could have asked open-ended questions designed to elicit knowledge of prior accusations during individual voir dire and could have then conducted follow-up questioning where appropriate. Such a procedure would have enabled appellant to discover which prospective jurors knew about the prior accusation without informing those who did not already know. Point of error two is overruled.

## 2. Punishment

In point of error three, appellant contends that the trial court erred by permitting testimony of a child about an extraneous offense incident without an inquiry into her competence to testify concerning the incident. The following occurred in the punishment stage of the trial:

Q. Latasha, I'm going to ask you about something that happened around Halloween, when you were three or four years old.

Do you remember that?

A. Yes, sir.

Q. Did anything unusual happen on that date?

[DEFENSE COUNSEL]: We will object. That is too remote to call on a child, twelve years old, to remember something that happened back when they were three years old. The remoteness makes it inadmissible.

Also, the prejudicial effect far outweighs any ends that it might serve toward justice.

THE COURT: Overruled, counsel. You may proceed.

The State then proceeded to examine Latasha concerning an incident in which appellant sexually molested her when she was three or four years old.

■ Appellant concedes that defense counsel's objection was "at best, inartful." He nevertheless contends that this objection

triggered the trial court's duty to inquire into the witness' competence without an explicit demand from defense counsel. We disagree.

Texas Rule of Criminal Evidence 601 states in relevant part:

Every person is competent to be a witness except as otherwise provided in these rules. The following witnesses shall be incompetent to testify in any proceeding subject to these rules:....

(2) *Children.* Children or other persons who, after being examined by the court, appear not to possess sufficient intellect to relate transactions with respect to which they are interrogated.

Unlike some rules, Rule 601 does not expressly require that a party request an examination by the court. *See* Texas Rules of Criminal Evidence 204 (hearing on judicial notice) and 705(c)(underlying facts or data upon which expert opinion is based). However, unlike the incompetency to stand trial statute, Rule 601 does not expressly impose upon the trial court the duty to conduct an inquiry on its own motion. *See* Article 46.02, § 2(b). Where the rule specifies a right to a hearing upon request, an objection to the substance of the testimony that would be the subject of such a hearing does not preserve error regarding the trial court's failure to conduct the hearing. *Jenkins v. State,* 912 S.W.2d 793, 813 (Tex.Crim.App.1993)(objections to expert testimony did not preserve error on failure to conduct Rule 705 hearing in the absence of an express request). For the reasons stated below, we hold that this principle applies even if the rule, statute, or other law is silent about whether or not the party must request a hearing. That is, to complain about failing to obtain a hearing or other inquiry, the party must have requested the hearing unless the rule, statute, or other law conferring the right to a hearing provides that the trial court has a duty to sua sponte conduct one.

The general rule is that a party must request the desired relief to preserve a complaint on appeal:

In order to preserve a complaint for appellate review, a party must have presented to the trial court a timely *request,* objection or motion, stating the specific grounds for the ruling he desired the court to make if the specific grounds were not apparent from the context.

Texas Rule of Appellate Procedure 52(a)(emphasis added). For instance, if a trial court sustains an objection to improper jury argument, the complaining party must request an instruction to disregard to preserve error on appeal if an instruction to disregard could have cured the prejudice resulting from the argument. *Sawyers v. State,* 724 S.W.2d 24, 38 (Tex.Crim.App.1986). Requesting a mistrial is insufficient to preserve error under those circumstances. *Id.* That is so because the appropriate remedy for a curable, erroneous argument to which objection has been sustained is an instruction to disregard. Requesting other forms of relief, such as a mistrial, does not preserve error concerning the absence of an instruction to disregard. If, on the other hand, the prejudice arising from an erroneous jury argument were incurable, a defendant would be required to request a mistrial to preserve error on appeal because a mistrial would be the appropriate remedy. *Cockrell v. State,* 933 S.W.2d 73, 89 (Tex.Crim.App.1996).

Moreover, we have held in at least one other context that a deficient record concerning the admissibility of evidence is charged against the complaining party if he failed to request a hearing. *Crane v. State,* 786 S.W.2d 338, 348 (Tex.Crim.App.1990). In *Crane,* the defendant moved to strike in-court identification testimony, and for a mistrial in the alternative, on the ground that the State failed to disclose evidence in violation of a discovery order. *Id.* at 347. We overruled the defendant's contention on appeal because, while he proved that the evidence was suppressed, he failed to show that the evidence was material. *Id.* at 348. We held that the trial court was under no obligation to conduct a hearing absent a request by the defendant. *Id.* Because no hearing was requested, the record did not contain evidence to support the defendant's claim, and nothing was presented for review. *Id.*

The rationale in *Crane* applies here. There is no evidence from the record that even remotely suggests that Latasha did not have the ability to understand and recall the

events in question. The only evidence in the record bearing upon that issue is Latasha's testimony that she did remember those events and her subsequent testimony describing the events in question. Appellant points to the lack of evidence in the record and ascribes error to the trial court for failing to conduct an inquiry, but the lack of evidence in the record on the witness' competence to testify is a result of appellant's failure to request such an inquiry.

Moreover, an objection to remoteness does not preserve a complaint concerning a trial court's failure to conduct a hearing because those are different complaints. It is axiomatic that error is forfeited when the complaint on appeal differs from the complaint at trial. *Burks v. State*, 876 S.W.2d 877, 908 (Tex.Crim.App.1994)(arguing at trial that extraneous offenses must be proven beyond a reasonable doubt before becoming admissible does not preserve complaint on appeal that extraneous offense should not have been admitted because charges had been dropped); *Butler v. State*, 872 S.W.2d 227, 236 (Tex.Crim.App.1994)(arguing at trial that voluntariness was raised because *Miranda* warnings were discussed does not preserve complaint on appeal that statement was obtained through physical force or threats of force).

Hence, because appellant did not request an inquiry into Latasha's competence to testify, he has forfeited the right to complain about the trial court's failure to conduct such an inquiry. Point of error three is overruled.

In point of error four, appellant contends that Article 37.071, § 2(b)(1) unconstitutionally diminishes the State's burden of proof on future dangerousness by using the word "probability." We have previously decided this issue adversely to appellant's position. *Robison v. State*, 888 S.W.2d 473, 481 (Tex. Crim.App.1994), *cert. denied*, 515 U.S. 1162, 115 S.Ct. 2617, 132 L.Ed.2d 859 (1995). Point of error four is overruled.

In point of error five appellant complains about the trial court's refusal to submit an instruction on the minimum number of years a prisoner must serve before becoming eligible for parole on a capital life sentence. In point of error six, he complains the trial court erred in instructing the jury not to consider or discuss any possible action by the Board of Pardons and Paroles. Appellant combines his discussion of these points in his brief. We have already held that it is not error for the trial court to refuse to instruct the jury on the minimum eligibility requirements for parole in a capital case. *Broxton v. State*, 909 S.W.2d 912, 918–919 (Tex.Crim. App.1995). We have also held that a trial court does not err in instructing a jury not to consider any possible action by the Board of Pardons and Paroles. *Anderson*, 932 S.W.2d at 507–508. Appellant presents no new arguments that would persuade us to revisit these issues. Points of error five and six are overruled.

In point of error seven, appellant complains that evidence was insufficient to support the jury's finding on the mitigation special issue, set out in Article 37.071, § 2(e). But, this Court does not conduct a sufficiency review of the mitigation special issue. *Green v. State*, 934 S.W.2d 92, 106–107 (Tex.Crim. App.1996). Point of error seven is overruled.

In point of error one, appellant claims that the jury's finding of a probability of future dangerousness[2] is so against the great weight of the evidence as to be manifestly unjust. He relies upon the factual sufficiency standard announced in *Clewis v. State*, 922 S.W.2d 126 (Tex.Crim.App.1996) and argues that *Clewis*' rationale applies equally to capital cases. He further argues that refusing to apply *Clewis* to capital cases would violate the Equal Protection Clause of the Fourteenth Amendment.

We have held that the power to review evidence for its factual sufficiency is inherent in our appellate jurisdiction. *Bigby v. State*, 892 S.W.2d 864 (Tex.Crim.App.1994). In *Clewis* we held that appellate courts have the power and the duty to conduct factual suffi-

---

**2.** Before a death sentence can be imposed, the jury must answer "yes" to the following issue: whether there is a probability that the defendant would commit criminal acts of violence that would constitute a continuing threat to society;
Article 37.071, § 2(b)(1).

ciency reviews of convictions in noncapital cases. *See Clewis,* generally. We have subsequently extended *Clewis* to convictions in capital cases. *Jones v. State,* 944 S.W.2d 642, 647–648 (Tex.Crim.App.1996). The question we confront today is whether *Clewis* should extend, in a capital case, to a *punishment* issue, namely the issue of future dangerousness.

An examination of all the cases cited in *Clewis* as support for conducting a factual sufficiency review reveals only one in which such a review may have been applied to a punishment issue. *See* cases cited in *Clewis,* 922 S.W.2d at 129 & 130 n. 6; *Id.* at 137, 138, 138 n. 4, 139, 140, 140 n. 7 & n. 8, 142 n. 10, 144 n. 12 (Clinton, J. concurring).[3] In *Villareal v. State,* 140 Tex.Crim. 675, 146 S.W.2d 406 (Tex.Crim.App.1940), *overruled on other grounds by, Mays v. State,* 563 S.W.2d 260, 264 n. 5 (Tex.Crim.App.1978), this Court held that certain inadmissible, but unobjected to, evidence was insufficient to sustain a jury finding of "malice" in a murder case, in which the defendant was given the death penalty. *Id.* 146 S.W.2d at 409–410. We explained that "it is within the power of this court to reverse a case on the facts and it may become its duty to do so." *Id.* at 409. We further expounded:

> [W]e have not overlooked the general rule, frequently announced, that the credibility of witnesses and the weight to be given their testimony exclusively rests with the jury and the lower court. Further, this court will not pass on the sufficiency of the evidence unless there is an entire failure of proof; and that the amount of punishment is the jury's special province. However, we do find that this court has upon occasions applied such rules with a degree of laxity where, under the facts of such cases, it appeared that the conviction was unjust or that the punishment was harsh or unreasonable. We are convinced that for these questions there can be no fixed rule

so firmly planted that it cannot be, under a proper state of facts, varied.

*Id.* at 409–410. We further held that punishment issues were also subject to such a sufficiency review:

> We are not able to say that this doctrine should apply in the matter of determining guilt and deny it in consideration of the amount of punishment which a jury assesses. It is no new thing for this court to consider the competence of evidence in determining its cogency, particularly where the extreme penalty has been assessed.

*Id.* at 410. Under the law at the time, malice was the subject of an instruction that enabled the jury to impose punishment for murder in excess of five years if malice were found to be present. *See* Texas Penal Code, Article 1257b (1948); *Burns v. State,* 159 Tex.Crim. 183, 262 S.W.2d 406, 407 (1953). Because death was imposed in *Villareal,* the malice instruction, in that case, performed a function similar to the special issues submitted to juries in death penalty cases today.

But, *Villareal* does not necessarily support the kind of review announced by *Clewis. Villareal* involved a "weakness" in the State's evidence—the essential evidence supporting the finding of malice[4] was deemed incompetent because of its inadmissible nature:

> The fact that incompetent evidence has been admitted without objection renders its admission harmless, but may not always lift its forcefulness to a superlative degree, or, indeed, add materially to its cogency.

146 S.W.2d at 410. *See also Franklin v. State,* 147 Tex.Crim. 636, 183 S.W.2d 573, 574 (1944)(*Villareal* reached its conclusion "based upon the weakness of the State's testimony"). The case did not involve the existence of overwhelming contrary evidence. While the Court expressed its belief in its power to review the "facts," it did so in the context of rejecting the notion that evidence could only

---

**3.** We have, once before, conducted a factual sufficiency review of the future dangerousness special issue without deciding whether such review was appropriate. *Hughes v. State,* 897 S.W.2d 285, 293 (Tex.Crim.App.1994).

**4.** The evidence—testimony by a doctor as to how the victim's injuries must have been caused—appears to have been the only evidence of malice. The evidence was also virtually the only proof of guilt, as the defendant admitted that he killed the victim, but testified that he did so in self-defense.

be reviewed on an "entire failure of proof." *See Id.* 146 S.W.2d at 409.

This Court's relaxation of the standard of review may simply have been a recognition that a "no evidence" standard was constitutionally inadequate. The Supreme Court recognized that same proposition in *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979):

> That the *Thompson [v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654 (1960)] "no evidence" rule is simply inadequate to protect against misapplications of the constitutional standard of reasonable doubt is readily apparent. "[A] mere modicum of evidence may satisfy a 'no evidence' standard...." *Jacobellis v. Ohio*, 378 U.S. 184, 202 [84 S.Ct. 1676, 1686, 12 L.Ed.2d 793 (1960)] (Warren, C.J., dissenting). Any evidence that is relevant—that has any tendency to make the existence of an element of a crime slightly more probable than it would be without the evidence, cf. Fed. Rul. Evid. 401—could be deemed a "mere modicum." But it could not seriously be argued that such a "modicum" of evidence could by itself rationally support a conviction beyond a reasonable doubt.

*Id.* at 320, 99 S.Ct. at 2789 (brackets and ellipsis in original). As Judge Meyers commented in his concurring opinion in *Clewis*, the *Jackson* standard, although termed "legal sufficiency" by this Court, "actually requires an assessment of 'factual sufficiency'" in that it is not a "no evidence" standard. *Clewis*, 922 S.W.2d at 150 (Meyers, J. concurring). Hence, *Villareal*'s formulation of the standard for reviewing sufficiency may have simply been an expression of the standard later formulated by the Supreme Court in *Jackson*.[5]

There is yet another distinction between the present case and *Villareal* that is relevant here. "Malice" was an issue of historical fact, but future dangerousness is, in essence, an issue of prediction. Findings of historical fact are either right or wrong at the time of trial. But, predictions are not right or wrong at the time of trial—they may be shown as accurate or inaccurate only by subsequent events. One may well be able to show that the evidence supporting a finding of a probability of future dangerousness is so deficient that no jury could rationally base a prediction thereon, and there are cases in which we have so held. *Ellason v. State*, 815 S.W.2d 656, 660–664 (Tex.Crim.App.1991); *Beltran v. State*, 728 S.W.2d 382, 390 (Tex. Crim.App.1987); *Keeton v. State*, 724 S.W.2d 58, 61–64 (Tex.Crim.App.1987).[6] But once the rationality of the prediction is established, attempting to determine whether a jury's prediction of the probability of future dangerousness is nevertheless wrong or unjust because of countervailing evidence is an impossible task. Many types of evidence, such as youthfulness, are a double-edged sword, construable as either increasing or decreasing the likelihood of future violence. *See Morrow v. State*, 910 S.W.2d 471, 471–473 (Tex.Crim.App.1995), *cert. denied*, — U.S. —, 116 S.Ct. 1683, 134 L.Ed.2d 784 (1996)(evidence can be either mitigating or aggravating in context of special issues); *Green v. State*, 934 S.W.2d 92, 105 n. 6 (Tex.Crim.App.1996)(youth can be either mitigating or aggravating).

---

**5.** Moreover, subsequent cases have often treated *Villareal* as involving fundamental error in the admission of evidence rather than a true sufficiency case. *See Johnson v. State*, 401 S.W.2d 837, 839 (Tex.Crim.App.1966); *Vasquez v. State*, 371 S.W.2d 389, 394 (Tex.Crim.App.1963)(on rehearing); *Boatwright v. State*, 169 Tex.Crim. 280, 343 S.W.2d 707, 708 (1960). One case characterized *Villareal* as involving charge error. *Cortez v. State*, 375 S.W.2d 313, 314 (Tex.Crim.App. 1964). *Villareal* was cited in both *Bigby* and *Clewis* as supporting a factual sufficiency review, but neither case distinguished it in any fashion from the myriad of guilt-innocence cases listed for supporting a factual review. *See Bigby*, 892 S.W.2d at 874; *Clewis*, 922 S.W.2d at 130 n. 6.

**6.** In his concurring opinion, Judge Mansfield contends that this Court already conducts a factual sufficiency review based upon factors established in *Keeton*. While some judges have at times treated the *Keeton* factors as establishing a factual sufficiency review, *see* e.g. *Martinez v. State*, 924 S.W.2d 693, 699–706 (Tex.Crim.App. 1996)(Baird, J. dissenting), that approach is misguided. The *Keeton* factors should not be weighed against each other to determine evidentiary sufficiency. Instead, those factors are simply guides to the kinds of evidence that we recognize as tending to support future dangerousness.

■ Moreover, a juror is not required to accord any particular circumstance mitigating relevance to the special issues. *Soria v. State*, 933 S.W.2d 46, 65 (Tex.Crim.App. 1996); *Penry*, 903 S.W.2d at 766. For this reason, a *Jackson* review of the mitigation special issue [7] is impossible. *McFarland v. State*, 928 S.W.2d 482, 499 (Tex.Crim.App. 1996). Whether a particular piece of evidence is mitigating in the context of that issue is a normative judgment that is not amenable to appellate review. *Id.*

Similar concerns apply to an attempt to conduct a *Clewis* review of a finding of a probability of future dangerousness. While the future dangerousness issue is not wholly normative in nature, the issue is highly subjective because it calls for a prediction of future events rather than an assessment of events that have already occurred. Such predictions are necessarily value-laden, and whether a particular circumstance tends to increase or reduce the likelihood of future violence is a question whose answer will vary widely from one individual to the next, depending at least in part upon the individual's values and experiences.

A *Jackson* review of the issue is feasible because that standard views evidence in the light that supports the jury's verdict, and asks only whether circumstances are present that a rational person somewhere could find prove a probability of future dangerousness beyond a reasonable doubt. A *Clewis* review, on the other hand, would necessarily assign some circumstances aggravating impact and other circumstances mitigating impact. Thus, a factual sufficiency review would require this Court to make its own determination of whether a circumstance carried mitigating, aggravating, or no weight, the result being that we would substitute our own determination of whether evidence is mitigating or aggravating for that of the jury. As we explained in *Clewis*: "Appellate courts should only exercise their fact jurisdiction to prevent a manifestly unjust result; ... those courts 'are not free to reweigh the

evidence and set aside a jury verdict merely because the judges feel that a different result is more reasonable' [citations omitted]." 922 S.W.2d at 135 (ellipsis in original).

■ It is not possible to say that a jury's finding of a probability of future dangerousness is against the great weight of the evidence unless we assign some evidence mitigating value. Because there is no evidence that must be considered to have mitigating value, a *Clewis* review of the future dangerousness issue is not possible. We hold that a factual sufficiency review of a jury's determination of a probability of future dangerousness is not required by the Texas Constitution.

■ We turn next to appellant's contention that refusing to extend *Clewis* to capital cases violates the Equal Protection Clause of the Fourteenth Amendment. His claim is without merit. *Clewis* applies equally to the guilt stage of both capital and noncapital cases. As for punishment proceedings, this Court has not held that *Clewis* applies to any punishment issues, whether in capital or noncapital cases. Moreover, even if this Court decided to extend *Clewis* to some noncapital punishment issues in the future—and we express no opinion on whether that will occur—the predictive nature of the future dangerousness issue would distinguish that issue sufficiently from other issues for purposes of equal protection. Point of error one is overruled.

The judgment of the trial court is AFFIRMED.

McCORMICK, P.J., filed a concurring opinion.

BAIRD, J., filed a concurring and dissenting opinion in which OVERSTREET, J., joined.

OVERSTREET, J., filed a concurring and dissenting opinion in which BAIRD, J., joined.

MANSFIELD, J., filed a concurring opinion in which WOMACK, J., joined.

---

7. The issue, required by Article 37.071, § 2(e), asks:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and back-

ground, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

McCORMICK, Presiding Judge, concurring.

I join the Court's opinion. I write separately to respond to the misrepresentations contained in Judge Baird's concurring and dissenting opinion.

The issue in point of error one is whether this Court will apply a *factual* (as opposed to legal) sufficiency review to the "future dangerousness" special issue. Relying primarily on the United States Supreme Court's decision in *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), Judge Baird's concurring and dissenting opinion asserts that our declining to apply a factual sufficiency review to the "future dangerousness" special issue (point of error one) and our declining to apply any sufficiency review to the mitigating evidence special issue (point of error seven) "now provides no meaningful appellate review" of the punishment issues in violation of the Eighth Amendment to the United States Constitution. This is incorrect.

We have decided in *McFarland v. State* as well as in several other cases that we are not constitutionally required to review the sufficiency of the evidence to support the jury's answer to the mitigating evidence special issue. See *McFarland v. State,* 928 S.W.2d 482, 498–99 (Tex.Cr.App.1996), cert.denied, —— U.S. ——, 117 S.Ct. 966, 136 L.Ed.2d 851 (1997) (constitutionality of Article 37.071, V.A.C.C.P., is not contingent upon appellate review of the mitigation issue). This is because Texas' capital sentencing scheme leaves it solely to the jury to decide whether certain evidence is mitigating or aggravating which Texas is not constitutionally prohibited from doing. See *McFarland,* 928 S.W.2d at 499 (we have abandoned any pretense of balancing mitigating evidence against aggravating evidence as a matter of appellate review of the punishment issues); *Heiselbetz v. State,* 906 S.W.2d 500, 508–09 (Tex.Cr.App.1995) (weight that each juror gives to particular "mitigating" evidence is left to the individual juror's discretion); see also *Franklin v. Lynaugh,* 487 U.S. 164, 178–

80, 108 S.Ct. 2320, 2330, 101 L.Ed.2d 155 (1988) (Eighth Amendment does not require a state to ascribe any specific weight to any particular factors to be considered by the jury, either aggravating or mitigating); *Pulley v. Harris,* 465 U.S. 37, 104 S.Ct. 871, 79 L.Ed.2d 29 (1984). Texas is not a "weighing" state in the sense that the reviewing court reweighs mitigating and aggravating factors on appeal. See *McFarland,* 928 S.W.2d at 499.

But, relying on *Clemons,* Judge Baird's concurring and dissenting opinion states the United States Supreme Court has "noted that the process of appellate courts reweighing of evidence was consistent with the pursuit of the Eighth Amendment's twin objectives of measured, consistent application of the death penalty and fairness to the accused." However, the concurring and dissenting opinion fails to mention that *Clemons* also says such a scheme is *not* constitutionally required. See *Clemons,* 494 U.S. at 753–54, 110 S.Ct. at 1451 (nothing in this opinion is intended to convey the impression that state appellate courts are required to or necessarily should engage in reweighing); see also *Morgan v. Illinois,* 504 U.S. 719, 725–27, 112 S.Ct. 2222, 2228, 119 L.Ed.2d 492 (1992) (there is not any one right way for a state to set up its capital sentencing scheme).

The concurring and dissenting opinion then disingenuously characterizes *Clemons* as saying that "failure to perform meaningful appellate review[1] would result in an automatic rule of affirmance that would be invalid under" the Eighth Amendment. Citing *Clemons,* 494 U.S. at 751–53, 110 S.Ct. at 1450. However, the concurring and dissenting opinion leaves out a critical prepositional phrase from the quote it relies on from *Clemons* for this statement. What *Clemons* actually says is:

> "An automatic rule of affirmance *in a weighing State* would be invalid under (citations omitted), for it would not give defendants the individualized treatment that would result from actual reweighing of the

---

1. By "meaningful appellate review," the concurring and dissenting opinion means reweighing

mitigating and aggravating factors on appeal.

mix of mitigating factors and aggravating circumstances." *Id.* (Emphasis Supplied).

Texas is not a "weighing" state. See *McFarland,* 928 S.W.2d at 499. Therefore, *Clemons* has no application to Texas' capital sentencing scheme and Texas is not constitutionally prohibited from declining to review the sufficiency of the evidence to support the jury's answer to the mitigating evidence special issue. See *id.*[2] And, for much the same reasons, which also are set out in the court's opinion, Texas is not constitutionally prohibited from declining to conduct a factual sufficiency review of the "future dangerousness" special issue as such a review would require this Court to reweigh mitigating and aggravating factors on appeal. See *Clewis v. State,* 922 S.W.2d 126, 135 (Tex.Cr.App.1996), and at 151–55 (McCormick, P.J., dissenting).

And, Texas' capital sentencing scheme does provide for "meaningful appellate review" of death sentences. Texas applies the *Jackson v. Virginia* "rationality" standard of reviewing the sufficiency of the evidence to support the jury's answer to the "future dangerousness" special issue. See *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 2789, 61 L.Ed.2d 560 (1979); *Barnes v. State,* 876 S.W.2d 316, 322 (Tex.Cr.App.), cert.denied, 513 U.S. 861, 115 S.Ct. 174, 130 L.Ed.2d 110 (1994).[3] This Court also can reverse a death sentence if a defendant has not had an opportunity to present "relevant mitigating evidence" or if the jury has not had a vehicle to consider and give effect to "relevant mitigating evidence." See *McFarland,* 928 S.W.2d at 499; *Alba,* 905 S.W.2d at 588–89 fn. 10; see also *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989).

With these comments I join the Court's opinion.

MANSFIELD, Judge, concurring.

I join the opinion of the Court except as to point of error number one. I can only concur in the disposition of that point of error.

In his first point of error, appellant contends the jury's affirmative finding as to the future dangerousness special issue was against the great weight of the evidence and manifestly unjust. In effect, appellant contends we should apply the sufficiency review standard to the future dangerousness special issue recently made applicable to claims of factual insufficiency in noncapital cases by our holding in *Clewis v. State,* 922 S.W.2d 126 (Tex.Crim.App.1996). I believe that appellant's contention is meritorious as to the applicable standard of review.

For some time, we have effectively conducted a factual sufficiency review in capital cases where an appellant has averred the evidence was insufficient to support a jury finding that he will be a future danger, as that term is defined in Texas Code of Criminal Procedure, Article 37.071 § 2(b)(1), i.e., there is a probability he would commit criminal acts of violence that would constitute a continuing threat to society. This factual sufficiency review was set forth by this Court in *Keeton v. State,* 724 S.W.2d 58 (Tex.Crim.App.1987). In deciding whether there was sufficient evidence to support a jury's finding that a defendant will constitute a continuing threat of violence to society, we held:

> The jury is permitted to consider many factors when determining whether the defendant will pose a continuing threat of violence to society. These factors include, but are not limited to:
>
> (1) the circumstances of the capital offense, including the defendant's state of mind and whether he or she was working alone or with other parties;

---

**2.** *Clemons* basically stands for the proposition that if a state is going to reweigh mitigating and aggravating factors on appeal, which Texas does not do, then it must engage in a "meaningful appellate review" of those factors instead of applying an "automatic rule of affirmance." See *Clemons,* 494 U.S. at 752, 110 S.Ct. at 1450. But, such a scheme is not constitutionally required. See *Clemons,* 494 U.S. at 753–754, 110 S.Ct. at 1451.

**3.** In applying this standard, this Court has even decided in some cases that the capital murder was not "so heinous or shocking as to evince a particularly dangerous aberration of character probative of future dangerousness." See *Alba v. State,* 905 S.W.2d 581, 588–89 fn. 10 (Tex.Cr.App.1995) (plurality op.), cert. denied, —— U.S. ——, 116 S.Ct. 783, 133 L.Ed.2d 734 (1996).

(2) the calculated nature of the defendant's acts;

(3) the forethought and deliberateness exhibited by the crime's execution;

(4) the existence of a prior criminal record, and the severity of the prior crimes;

(5) the defendant's age and personal circumstances at the time of the offense;

(6) whether the defendant was acting under duress or the domination of another at the time of the commission of the offense;

(7) psychiatric evidence; and

(8) character evidence.

*Keeton, supra,* at 61. *See also Broussard v. State,* 910 S.W.2d 952, 955 (Tex.Crim.App. 1995); *Dinkins v. State,* 894 S.W.2d 330, 358 (Tex.Crim.App.1995); *Vuong v. State,* 830 S.W.2d 929, 935 (Tex.Crim.App.), *cert. denied,* 506 U.S. 997, 113 S.Ct. 595, 121 L.Ed.2d 533 (1992). No one factor is dispositive and the jury's affirmative finding may withstand a sufficiency challenge even if there is a lack of evidence relating to one or more of these eight factors. *Dinkins, supra,* at 358; *Broussard, supra,* at 955. At the penalty stage, the jury may consider all of the evidence adduced at the guilt stage. *Keeton, supra,* at 61.

In *Clewis,* we held:

In conducting a factual sufficiency review, the court of appeals views all the evidence without the prism of "in the light most favorable to the prosecution" ... [and] set[s] aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust.

*Clewis, supra,* at 134.

The evidence supporting the jury's affirmative answer as to the future dangerousness special issue is compelling. First, appellant had a substantial past criminal history, including a prior conviction for a kidnapping/beating in 1987. Testimony was introduced of a violent assault and rape in 1985 committed by appellant, a repeated sexual assault at knifepoint committed by appellant in 1986 and a 1987

molestation by appellant of his four-year-old daughter, Latasha, which resulted in her hospitalization for five days. There was testimony from Latasha's mother that appellant threatened to kill her with a stick. Appellant's history supports a rational finding he would likely commit violent acts of a sexual nature in the future.

The circumstances of the offense support the jury's finding as to the future dangerousness special issue. Evidence adduced at trial showed appellant while alone in his car with his twelve-year-old stepdaughter, got her drunk, had sex with her, and beat her head in with multiple blows from an axe. He then secreted her body in a ditch. This evidence clearly shows appellant acted by himself, with forethought and deliberateness, and with calculation (there was testimony he attempted to eliminate or hide evidence of his commission of the offense). There was no evidence he was under duress or domination of another, or that he was acting with other parties. One psychiatrist, Dr. Coons, testified it was his opinion appellant would not likely be a future danger within the structured environment of the penitentiary. A second psychiatrist, Dr. Scott, testified it was his opinion there was a substantial, considerable risk appellant would commit future acts of violence. Clearly, using the factors set forth in *Keeton* and the other cases cited above, the evidence is more than sufficient to support the jury's affirmative finding as to the future dangerousness special issue.

Since we function, in effect, as a court of appeals with respect to direct appeals, it is my opinion *Clewis* is the applicable standard of review that we must apply to factual sufficiency claims as to the guilt/innocence phase of a capital trial. Similarly, it is my opinion—since we already effectively perform a factual sufficiency review on the future dangerousness special issue—we should apply the *Clewis* standard.[1] The factors set forth in *Keeton* provide a means by which the *Clewis* standard of review can be applied to a claim the evidence is factually insufficient to

---

1. I agree that *Clewis* does not apply to the mitigation special issue which, by its very nature, cannot logically be the subject of a factual suffi-

ciency review. *See McFarland v. State,* 928 S.W.2d 482, 499 (Tex.Crim.App.1996).

support an affirmative answer as to the future dangerousness special issue.

The same safeguards we announced in *Clewis* so as to prevent courts of appeals from merely substituting their judgment for that of the jury when exercising their fact jurisdiction are equally applicable to our exercise of our fact jurisdiction when reviewing the jury's affirmative answer as to the future dangerousness special issue.

> "In order that this court may in the future determine if a correct standard of review of factual insufficiency points has been utilized, courts of appeals, when reversing on insufficiency grounds, should in their opinions, detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient ... as to be manifestly unjust; why it shocks the conscience; or clearly demonstrates bias. Further, those courts, in their opinions should state in what regard the contrary evidence greatly outweighs the evidence in support of the verdict. (citations omitted) We see no reasons why these safeguards, which we held adequate in a factual sufficiency review of an affirmative defense (citation omitted), are not also adequate in a factual sufficiency review of the elements of the offense. Thus, these safeguards help ensure that the factfinder is given the appropriate deference and that the defendant's right to trial by jury remains inviolate."

*Clewis, supra,* at 136–137.

Applying *Clewis'* standard of review to the present case, and guided by the factors set forth in *Keeton,* the evidence is factually sufficient to support the jury's finding that there is a probability appellant will commit future acts of criminal violence. This evidence includes the circumstances of the offense itself, psychiatric testimony, and appellant's history of committing criminal violent acts. We will set aside the jury's affirmative answer as to the future dangerousness special issue only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. Because the jury's affirmative answer as to this special issue in the present case is supported by a substantial quantity of evidence, it is not clearly wrong and unjust and, under *Clewis,* should not be set aside.

I join the opinion of the Court, but concur as to its disposition of appellant's first point of error.

WOMACK, J., joins.

BAIRD, Judge, concurring and dissenting.

I agree there was no error at the guilt phase of trial sufficient to warrant reversal of appellant's conviction. Therefore, I concur in the decision to affirm that portion of the trial court's judgment. However, I dissent to the majority's failure to reach the merits of appellant's first and seventh points of error which contend the evidence is insufficient to support the jury's answers to the punishment issues of Tex.Code Crim. Proc. Ann. art. 37.071.

## I.

For the reasons stated in *Morris v. State,* 940 S.W.2d 610, 621 (Tex.Cr.App.1996) (BAIRD and Overstreet, JJ., dissenting), I would hold the future dangerousness punishment issue of art. 37.071, § 2(b)(1) is subject to a factual sufficiency review, and I would hold "the *Penry* issue," art. 37.071, § 2(e), is subject to appellate review. Therefore, I dissent to the disposition of points of error one and seven.

In light of the majority's resolution of these points of error, and our decision in *Martinez v. State,* 924 S.W.2d 693, 694–98 (Tex.Cr.App.1996), this Court now provides no meaningful appellate review of the punishment issues of art. 37.071. The failure to do so violates the Eighth Amendment.

## II.

Our capital sentencing scheme passed constitutional muster in *Jurek v. Texas,* 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976). As a part of its holding, the Supreme Court stated:

> ... By providing *prompt judicial review of the jury's decision in a court with statewide jurisdiction, Texas has provided a means to promote the evenhanded, rational, and consistent imposition of death sen-*

*tences under law.* Because this system serves to assure that sentences of death will not be "wantonly" or "freakishly" imposed, it does not violate the Constitution. *Id.,* 428 U.S. at 276, 96 S.Ct. at 2958.[1] This holding was important because decisions which give rise to a death sentence must be subject to appellate review. *See, Furman v. Georgia,* 408 U.S. 238, 310, 92 S.Ct. 2726, 2762, 33 L.Ed.2d 346 (1972); *Lockett v. Ohio,* 438 U.S. 586, 98 S.Ct. 2954, 57 L.Ed.2d 973 (1978); *Eddings v. Oklahoma,* 455 U.S. 104, 102 S.Ct. 869, 71 L.Ed.2d 1 (1982); *Gregg v. Georgia,* 428 U.S. 153, 96 S.Ct. 2909, 49 L.Ed.2d 859 (1976); *Jurek,* 428 U.S. at 276, 96 S.Ct. at 2958; *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989); *and, Proffitt v. Florida,* 428 U.S. 242, 96 S.Ct. 2960, 49 L.Ed.2d 913 (1976).

In *Clemons v. Mississippi,* 494 U.S. 738, 110 S.Ct. 1441, 108 L.Ed.2d 725 (1990), the Supreme Court spoke at length about the necessity of *meaningful* appellate review. The Court noted that the process of appellate courts reweighing of evidence was consistent with the pursuit of the Eighth Amendment's twin objectives of measured, consistent application of the death penalty and fairness to the accused. *Id.,* 494 U.S. at 748, 110 S.Ct. at 1448 (citing *Eddings, supra; and, Lockett, supra*). The Court pointedly noted that failure to perform meaningful appellate review would result in an automatic rule of affirmance that would be invalid under *Lockett, supra,* and *Eddings, supra. Clemons,* 494 U.S. at 752, 110 S.Ct. at 1450. *See also, Parker v. Dugger,* 498 U.S. 308, 321–322, 111 S.Ct. 731, 739–740, 112 L.Ed.2d 812 (1991)

(Appellate review of mitigating evidence by the Florida Supreme Court was so deficient as to be arbitrary.).

Meaningful appellate review has been a requirement of the Eighth Amendment since the States began re-enacting capital sentencing schemes following *Furman.* For example, in upholding the constitutionality of the Georgia scheme the Supreme Court held:

> As an important additional safeguard against arbitrariness and caprice, the Georgia statutory scheme provides for automatic appeal of all death sentences to the State's Supreme Court. *That court is required by statute to review each sentence of death and determine whether it was imposed under the influence of passion or prejudice, whether the evidence supports the jury's finding of a statutory aggravating circumstance, and whether the sentence is disproportionate compared to those sentences imposed in similar cases.*

*Gregg v. Georgia,* 428 U.S. at 198, 96 S.Ct. at 2937.

Similarly, in *Proffitt v. Florida, supra,* the Supreme Court stated:

> The statute provides for automatic review by the Supreme Court of Florida of all cases in which a death sentence has been imposed.... Since, however, the trial judge must justify the imposition of a death sentence with written findings, *meaningful appellate review* of each such sentence is made possible and the Supreme Court of Florida, like its Georgia counterpart, considers its function to be *to [guarantee] that the [aggravating and mitigating] reasons present in one case will*

---

1. All emphasis is supplied unless otherwise indicated.

Since *Jurek,* our capital sentencing scheme has been modified to include Tex.Code Crim. Proc. Ann. art. 37.071, § 2(e) which provides for submission of the following punishment issue:

Whether, taking into consideration all of the evidence, including the circumstances of the offense, the defendant's character and background, and the personal moral culpability of the defendant, there is a sufficient mitigating circumstance or circumstances to warrant that a sentence of life imprisonment rather than a death sentence be imposed.

Article 37.071, § 2(e) was enacted following *Penry v. Lynaugh,* 492 U.S. 302, 109 S.Ct. 2934, 106 L.Ed.2d 256 (1989), which held the Texas

capital sentencing scheme must provide the jury with a vehicle to express its "reasoned moral response" to mitigating evidence in reaching its selection decision. Because of its source, the § 2(e) punishment issue is commonly referred to as "the *Penry* issue." In conjunction with this issue, the Legislature enacted Tex.Code Crim. Proc. Ann. art. 44.251 which provides:

(a) The court of criminal appeals shall reform a sentence of death to a sentence of confinement in the institutional division of the Texas Department of Criminal Justice for life if the court finds that there is *insufficient evidence to support ... a negative answer to an issue submitted to a jury under Section 2(e), Article 37.071, or Section 3(e), Article 37.0711,* of this code.

*reach a similar result to that reached under similar circumstances in another case. ... If a defendant is sentenced to die, this Court can review that case in light of the other decisions and determine whether or not the punishment is too great.*

*Proffitt,* 428 U.S. at 250–252, 96 S.Ct. at 2966. (Internal quotes omitted.)

Meaningful appellate review plays the crucial role of ensuring that the death penalty is not imposed arbitrarily or irrationally. *Parker,* 498 U.S. at 321, 111 S.Ct. at 739. The authority discussed above confirms that the Eighth Amendment creates an absolute duty on this Court to review the jury's answers to the punishment issues of art. 37.071. By not doing so we shirk our Constitutional responsibility and legislative mandate and, in the process, apply our capital sentencing scheme in an unconstitutional manner.[2]

Accordingly, I dissent to the resolution of points of error one and seven.

OVERSTREET, J., joins this opinion.

OVERSTREET, Judge, concurring and dissenting.

I note that the majority, in its discussion of appellant's points five and six, which complain about not instructing the jury about the requirement that one must serve 35 years before becoming eligible for parole on a life sentence for capital murder and instructing the jury not to consider or discuss possible

action by the Board of Pardons and Paroles, does not mention the fact that there was testimony before the jury about that 35 year requirement. Thus the jury was informed of that 35 year requirement, in spite of the trial court's jury charge instruction not to consider the possibility of any action by the Board of Pardons and Paroles.

I am concerned and I must continue to comment upon the problem in refusing to instruct the jury about the required number of years of incarceration before becoming eligible for parole while serving a life sentence for capital murder. *See, e.g., Smith v. State,* 898 S.W.2d 838 (Tex.Cr.App.1995)(plurality opinion), *cert. denied,* 516 U.S. 843, 116 S.Ct. 131, 133 L.Ed.2d 80 (1995); *Morris v. State,* 940 S.W.2d 610 (Tex.Cr.App.1996), *cert. denied,* —— U.S. ——, 117 S.Ct. 2461, 138 L.Ed.2d 218 (1997). As I discussed in some detail in my dissent to *Rhoades v. State,* 934 S.W.2d 113, 131–44 (Tex.Cr.App.1996)(Overstreet, J., dissenting), in light of the United States Supreme Court's holding in *Simmons v. South Carolina,* 512 U.S. 154, 114 S.Ct. 2187, 129 L.Ed.2d 133 (1994), I believe that the United States Constitution's guarantees of due process required appellant's jury be informed of the thirty-five year parole eligibility law.

I also note that four members of the United States Supreme Court have recently commented upon the "[p]erverse[ness]" of our death penalty scheme not letting the jury

---

**2.** Judge McCormick believes *Clemons* has no application, *ante* at 169, and therefore, criticizes me for relying on it. (This is a purely selective reading, as Judge McCormick does not contend the other cases cited in this opinion have no application to our statute. He then stoops to use this selective reading to call me disingenuous.). The McCormick argument boils down to this: only weighing states are required to provide meaningful appellate review. This simplistic argument fails to recognize that the constitutionality of our capital sentencing scheme depends on judicial review by this Court. *Jurek,* 428 U.S. at 276, 96 S.Ct. at 2958. Obviously this appellate review must be meaningful, otherwise death sentences are imposed in a capricious, arbitrary and random manner, a manner which violates the Eighth Amendment regardless of where it occurs. This fundamental notion of appellate jurisprudence was recognized by the Legislature in enacting art. 44.251(a), which provides for the reformation of a death sentence when this Court

finds there is insufficient evidence to support a negative answer to "the *Penry* issue." *See,* n. 1, *supra.* As pointed out by Judge Overstreet, *infra,* a legal sufficiency review of "the future dangerousness issue" is not meaningful. Therefore, a factual sufficiency review is required. Unfortunately, this fundamental notion of meaningful appellate review is lost on Judge McCormick. Finally, while the cases cited by Judge McCormick do hold that we are not a weighing state, that is to say that we are not a weighing state in that our capital sentencing scheme does not prescribe a list of factors and then assign to them a mitigating or aggravating value. However, we have always weighed the factors recognized in *Keeton v. State,* 724 S.W.2d 58, 61 (Tex.Cr.App. 1987), in reviewing the sufficiency of the evidence. *See id.,* and cases cited therein at pp. 61–64. In fact, Judge McCormick adopted that weighing process when he joined the majority opinion in *Keeton.* Talk about disingenuous!

know when the defendant will become eligible for parole if he is not sentenced to death. *Brown v. Texas*, —— U.S. ——, 118 S.Ct. 355, 139 L.Ed.2d 276. I likewise find rather perverse this Court's continued approval of keeping jurors ignorant and uninformed of such a critical legal fact when making life and death decisions as to whether the death penalty will be assessed. Capital jurors deserve to be so informed so that they can make an informed decision. Hopefully a majority of this Court will soon realize this; before the Supreme Court explicitly informs us via a myriad of our opinions being reversed.

I am also greatly concerned about the majority's discussion of point number one, which alleges, "The jury's finding on future dangerousness was against the great weight of the evidence and manifestly unjust." The majority concludes that a factual sufficiency "*Clewis* review of the future dangerousness issue is not possible." *McGinn v. State*, 961 S.W.2d 160, 168 (Tex.Cr.App.1998). Because I disagree with that conclusion, particularly in light of our prior analysis of what has previously been briefed as "legal" sufficiency review of the future dangerousness issue, I respectfully dissent.

The United States Supreme Court requires a *meaningful* appellate review of a death sentence. It has emphasized "the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally." *Parker v. Dugger*, 498 U.S. 308, 321, 111 S.Ct. 731, 739, 112 L.Ed.2d 812, 826 (1991). It has also approved our Texas capital punishment scheme, in part because of our appellate review of the jury's decision, which serves to assure that death sentences will not be "wantonly" or "freakishly" imposed. *Jurek v. Texas*, 428 U.S. 262, 276, 96 S.Ct. 2950, 2958, 49 L.Ed.2d 929, 941 (1976). And we have been doing that review based upon claims of legal insufficiency of evidence to support the jury's answers to the punishment special issues.

However, a true application of the *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560, (1979) legal sufficiency standard of review would result in each and every future dangerousness finding being upheld—

the facts of any capital murder, when viewed in the requisite *Jackson v. Virginia* light most favorable to the prosecution and verdict, would be sufficient. When viewed in that most favorable light, how can a jury be irrational in concluding that someone who has committed any capital murder would be a future danger, i.e. that there is a reasonable probability that that person would commit acts of criminal violence that would constitute a continuing threat to society? It would appear to me that it is impossible to truly view the evidence in the light most favorable to a jury's finding of future dangerousness and not find the evidence sufficient to support that finding in light of the facts of any capital murder. However, such automatic approval of the future dangerousness finding, when coupled with the refusal to review the finding on the mitigation special issue, would not provide the above-noted required "meaningful" appellate review of a death sentence.

Yet this Court, in the not-too-distant past, has indeed on occasion actually found insufficient evidence of future dangerousness and reformed the death sentence to life. *See, e.g., Ellason v. State*, 815 S.W.2d 656 (Tex. Cr.App.1991); *Smith v. State*, 779 S.W.2d 417 (Tex.Cr.App.1989); *Huffman v. State*, 746 S.W.2d 212 (Tex.Cr.App.1988); and *Keeton v. State*, 724 S.W.2d 58 (Tex.Cr.App. 1987)(op. on reh'g). However, this Court did not really apply a true *Jackson v. Virginia* test, but rather weighed all of the evidence, applied the factors of *Keeton v. State, supra*, 724 S.W.2d at 61, and made a judgment call on whether the future dangerousness finding, which would result in a death sentence, was appropriate in light of all of the evidence. The *Keeton* factors even include consideration of potentially mitigating factors, such as the defendant's age and personal circumstances, the forethought and deliberateness of the acts, the existence or absence of a prior criminal record, character evidence (good and bad), and whether the defendant was acting under the domination of another at the time of the offense. A true *Jackson v. Virginia* analysis of viewing the evidence in the light most favorable to the verdict *would disregard any and all potentially mitigating aspects of evidence* because such would be

viewing in a light *contrary* to the verdict. The weighing of evidence via the *Keeton* factors to decide whether the jury's finding on the future dangerousness issue is "rational" is much more akin to a factual rather than legal sufficiency review.

Regardless of what the standard is called, it is critical that this Court conduct a "meaningful" review, such that there is no automatic determination that, by virtue of a guilty verdict for the offense of capital murder, the evidence is always sufficient to support the answers to the future dangerousness special issue. Unless such a review is conducted, our punishment scheme will undoubtedly run afoul of the United States Constitution.

So I reiterate that regardless of what the standard is called, legal or factual sufficiency, this Court must conduct a "meaningful" review. In light of the prior cases, the standard which we have traditionally used has provided such a meaningful review to require that the death sentence was not arbitrary or capricious in contravention of the U.S. Constitution. And we must continue to actually conduct a "meaningful" review rather than simply accepting that the horrible facts of each and every capital murder case justify a finding of future dangerousness and a death sentence. However, I believe that we should be honest and declare for the bench and bar that we are not conducting a true *Jackson v. Virginia* review but rather are conducting the required "meaningful" review of the death sentence.

This Court can certainly call an elephant a giraffe; but that does not change the true nature of the beast—an elephant is an elephant. We should at least be honest and forthright about our standards and methodology of review, and continue to conduct a "meaningful" review via the *Keeton* factors rather than viewing the evidence in the light most favorable to the future dangerousness finding and automatically approving such a finding because the facts of any capital murder support a finding of future dangerousness when reviewed in that most favorable light.

Because the majority of this Court refuses to acknowledge and apply our true traditional process of review, I respectfully dissent to its holding refusing to review appellant's claim of factually insufficient evidence, i.e. that the jury's finding was against the great weight of the evidence and unjust, on the future dangerousness special issue. Nevertheless, I believe that in utilizing the above-noted *Keeton* factors and our traditional methodology of reviewing the sufficiency of evidence on the future dangerousness issue, the evidence is sufficient to support the jury's finding thereon.

Therefore, I concur in overruling appellant's claims in point of error number one, dissent to the analysis and discussion on points five and six, and concur with the remainder of the opinion.

BAIRD, J., joins.