IN THE COURT OF CRIMINAL APPEALS

                                    OF
TEXAS

 

                                                                              

                                                                NO.
AP-74,844



 

                                        TERRY
DARNELL EDWARDS, Appellant

 

                                                                             v.

 

                                                        THE
STATE OF TEXAS

 



                             ON
DIRECT APPEAL OF CAUSE NO. F02-15086-JN

                                 FROM
THE 195TH JUDICIAL DISTRICT COURT

                                                             DALLAS
COUNTY



 

Cochran, J., delivered
the opinion of the Court, in which Keller, P.J., and Price, Womack, Johnson, Keasler, Hervey,
and Holcomb, JJ., joined.  Meyers,
J., not participating.

 

                                                                  O
P I N I O N

 








In November 2003, a jury convicted
appellant of capital murder.[1]  Pursuant to the jury=s answers to the special issues set
forth in Texas Code of Criminal Procedure Article 37.071, sections 2(b) and
2(e), the trial judge sentenced appellant to death.[2]  Direct appeal to this Court is automatic.[3]  Appellant raises thirteen points of error
including challenges to the sufficiency of the evidence at the punishment stage
of trial.  We affirm.

                     SUFFICIENCY
OF FUTURE DANGEROUSNESS EVIDENCE

Appellant claims in his fourth point
of error that the evidence presented at trial was legally insufficient to
support the jury=s finding that he would be a continuing threat to society.[4]  In reviewing the sufficiency of the evidence
at punishment, this Court looks at the evidence in the light most favorable to
the verdict to determine whether any rational trier of fact could have believed
beyond a reasonable doubt that there is a probability that appellant would
commit criminal acts of violence that would constitute a continuing threat to
society.[5]              Essentially,
appellant argues that, while he may be a threat to free society, he is not a
danger to prison society where he will be confined for a minimum of forty
years.  However, in deciding whether a
defendant poses a continuing threat to Asociety,@ this Court has repeatedly held that
a jury considers free society as well as prison society.[6]








Viewed in the light most favorable to
the verdict, the evidence of the instant offense presented at trial showed the
following:  On the morning of July 8,
2002, appellant and another man robbed and killed two clerks at a Dallas Subway
sandwich shop.  Both victims were shot in
the head from only inches away. 
Appellant later gave a statement in which he admitted being inside the
sandwich shop but claimed that the other man, AT-Bone,@ did the shooting.  Appellant acknowledged having the money
stolen from the store and the gun used to kill the victims, but claimed that AT-Bone@ gave him the gun when they left the
store.  Appellant had worked at that
particular Subway some months earlier, but he had been fired when it appeared
that he had been stealing money from the register.  Appellant had previously been fired from
another Subway shop for misappropriating store funds under his control.

The State also presented evidence
that appellant had been charged with felony theft and placed on deferred
adjudication community supervision on March 25, 1992.  On November 7, 1997, appellant was
adjudicated guilty and sentenced to five years in prison.  On that same day, he was also convicted of
possession with intent to deliver cocaine and sentenced to five years and a
$500 fine.  

Michael Weast testified that he was
in a Subway shop in Fort Worth at about 9:00 p.m. on April 26, 2002.  As he was preparing to leave, two men came in
and began acting suspiciously.  One of
the men pulled a gun and ordered the people behind the counter to lie down
while the other man apparently took the video surveillance tape.  As they drove off from the Subway, the
robbers almost ran down a uniformed deputy sheriff who drew his gun and yelled
at them to stop.  Weast identified
appellant as the perpetrator without the gun.








A rational jury could have concluded
that appellant was engaging in an increasing pattern of violence and, thus,
would continue to be a threat to society.[7]  Accordingly, we hold the evidence legally
sufficient to support the jury=s affirmative answer to the future dangerousness issue.[8]  Point of error four is overruled.

In his fifth point of error,
appellant argues that the evidence is factually insufficient to sustain the
jury=s affirmative answer to the future
dangerousness punishment question.[9]  In McGinn v. State,[10]
we determined such a review is not constitutionally required and refused to
extend the Clewis[11]
factual sufficiency review to the future dangerousness issue.[12]  Appellant has not persuaded us to revisit
this holding.  Point of error five is
overruled.

                                                            VOIR
DIRE ISSUES








In his first point of error,
appellant asserts that the trial court violated his rights to due process and
the effective assistance of counsel by Adenying [his] motion to quash the
panel of three prospective jurors which included venire member James Redden
because the trial court instructed the jury panel that >mitigation= was a >justifying= or >extenuating= circumstance for the offense.@ 
Appellant asserts that the definition the trial court gave the panel was
improper under the law and restricted the jurors= consideration of mitigating
evidence.  He claims that he was harmed
by this improper definition because he had to use a valuable peremptory
challenge on one member of the panel, Redden, which he would have used on a
different venire person had the court not erred.

Appellant correctly states that a
defendant may suffer harm when, due to trial court error, he is forced to use a
peremptory strike to remove a venireperson and thereafter suffers a detriment
from the loss of the strike.[13]  However, because the record reflects that
appellant received an extra peremptory challenge in addition to the fifteen he
was granted by statute, appellant cannot demonstrate here that he suffered a
detriment from the loss of the strike he used on Redden.[14]  Appellant=s first point of error is overruled. 








Appellant complains in points of
error two and three that the trial court erred in granting the State=s challenges for cause to venire
members Cecelia Hurley and Byron Tatum. 
During questioning, Ms. Hurley indicated that she had a bias in favor of
police testimony.  The State challenged
her for cause based on this bias.[15]  Mr. Tatum, on the other hand, indicated that
he harbored a bias against the range of punishment for the lesser included
offense of murder.  Specifically, he did
not believe he could give five years for an intentional murder.[16]  Mr. Tatum also indicated that the beyond a
reasonable doubt standard was too low and he would have to be nearly one
hundred percent certain before he could convict someone of such a serious
crime.[17]  The State challenged Mr. Tatum on both of
these bases.

Error asserted on these bases is not
of constitutional dimension.[18]  Thus, a reversal is warranted only if the
record shows that the error deprived the defendant of a lawfully constituted jury.[19]  Even if we assume that non-constitutional
error occurred, appellant has failed to show that he was deprived of a lawfully
constituted jury.[20]  Points of error two and three are overruled.

                                                               CHARGE
ISSUE








In his sixth point of error,
appellant claims that the trial court erred Aby refusing to instruct the jury
that, when answering the future dangerousness special issue, the jury could
consider that appellant would not be eligible for parole for at least forty
years if a life sentence were assessed.@ 
The record reflects that the trial court provided the parole instruction
required by Article 37.071 ' 2(e)(2)(B).  Among
other things, this instruction informed the jury that a defendant sentenced to
life imprisonment would not be eligible for parole for 40 years and that parole
eligibility did not mean that parole would be granted.  The trial court=s refusal to provide any additional
parole‑eligibility instruction did not violate due process and was not
error.[21]  Point of error six is overruled. 

                                  CONSTITUTIONALITY
AND RELATED ISSUES








In his seventh point of error, appellant
claims that the Texas death penalty scheme violates due process because the
mitigation question submitted to the jury pursuant to Article 37.071, section
2(e), does not require the State to prove the absence of sufficient mitigating
circumstances beyond a reasonable doubt. 
Appellant relies upon the United States Supreme Court=s opinions in Apprendi v. New
Jersey,[22]
Ring v. Arizona,[23]
and Blakely v. Washington,[24]
to support his argument.  We have
previously rejected such claims and appellant has given us no reason to revisit
the issue here.[25]  Appellant=s seventh point of error is
overruled. 

In his eighth through eleventh points
of error, appellant further challenges the constitutionality of the Texas
capital sentencing scheme.  Specifically,
in his eighth point, appellant claims that the A12-10 Rule@ of Article 37.071 violated appellant=s right to due process and the
prohibition against cruel and unusual punishment.  In his ninth point, appellant claims that the
court=s failure to define the terms Aprobability,@ Acriminal acts of violence,@ Acontinuing threat to society,@ Apersonal moral culpability,@ and Amoral blameworthiness@ violated his right to due process,
his right to an impartial jury, and the prohibition against cruel and unusual
punishment because the terms are vague and indefinite.  And in his tenth and eleventh points of
error, appellant claims that the Texas death penalty scheme denied appellant
due process of law and due course of law, and it imposed cruel and unusual
punishment upon him in violation of the United States and Texas Constitutions Abecause of the impossibility of
simultaneously restricting the jury=s discretion to impose the death
penalty while also allowing the jury unlimited discretion to consider all
evidence militating against imposition of the death penalty.@








This Court has previously considered
and rejected all of these claims, and appellant has given us no reason to
revisit the issues here.[26]  Points of error eight through eleven are
overruled.

Appellant asserts in his twelfth and
thirteenth points of error that the cumulative effect of the above-enumerated
constitutional violations denied him due process and due course of law.  Because appellant has not shown any error,
there can be no cumulative effect.[27]  Points of error twelve and thirteen are
overruled.

We affirm the judgment of the trial
court. 

 

Delivered:
March 1, 2006

 

Do
Not Publish











[1]
Tex. Penal Code  '
19.03(a). 





[2]
Tex. Code Crim. Proc. art.
37.071, '
2(g).  





[3]
Art. 37.071, ' 2(h).





[4]
See art. 37.071, '
2(b)(1).  





[5]
Ross v. State, 133 S.W.3d 618, 621 (Tex. Crim. App. 2004) (applying Jackson
v. Virginia, 443 U.S. 307 (1979), standard to review evidence on Afuture dangerousness@ punishment issue); see also Allridge
v. State, 850 S.W.2d 471, 487 (Tex. Crim. App. 1991). 





[6]
Morris v. State, 940 S.W.2d 610, 613 (Tex. Crim. App. 1996).  





[7]
In arguing that the evidence is insufficient to support a rational jury=s finding that appellant probably Awould commit criminal acts of violence
that would constitute a continuing threat to society,@
appellant relies primarily upon defense expert testimony that he had not posed
any special threat during his previous prison stay.  The defense experts testified that, while
appellant probably would pose a future danger to others in the Afree world,@
they saw nothing in his history of prior incarceration that would lead them to
believe that he would be especially violent in prison.  This argument ignores, however, the fact
that, in the time between his first prison stay and the time that the jury was
required to make its finding, appellant had committed an aggravated robbery and
a very violent capital murder.  





[8]
Ross, 133 S.W.3d at 621; Allridge, 850 S.W.2d at 487.





[9]
See art. 37.071, '
2(b)(1). 





[10]
961 S.W.2d 161 (Tex. Crim. App. 1998).





[11]
922 S.W.2d 126 (Tex. Crim. App. 1996).





[12]
McGinn, 961 S.W.2d at 166-69; see also Manns v. State, 122 S.W.3d
171, 194 (Tex. Crim. App. 2003); Chamberlain v. State, 998 S.W.2d 230,
234 (Tex. Crim. App. 1994).





[13]
See, e.g., Sells v. State, 121 S.W.3d 748, 758 (Tex. Crim. App. 2003).





[14]
Id.; see also Feldman v. State, 71 S.W.3d 738, 743-45 (Tex. Crim. App.
2002) (when record showed that defendant Areceived
an extra peremptory challenge in addition to the fifteen he was granted by
statute, [defendant] can only demonstrate harm by showing that at least two of the complained-of
challenges were erroneously denied@)
(emphasis in original).





[15]
Art. 35.16(a)(9) and (b)(3). 





[16]
Art. 35.16(b)(3). 





[17]
Id.





[18]
Jones v. State, 982 S.W.2d 386, 391 (Tex. Crim. App. 1998).





[19]
Id. at 394.





[20]
Id.; see also Murphy v. State, 112 S.W.3d 592, 598 (Tex. Crim. App.
2003), cert. denied, 541 U.S. 940 (2004); Feldman, 71 S.W.3d at
749.





[21]
See Newbury v. State, 135 S.W.3d 22, 45 (Tex. Crim. App.), cert.
denied, 543 U.S. 990 (2004). 





[22]
530 U.S. 466 (2000).





[23]
536 U.S. 584 (2002).





[24]
542 U.S. 296 (2004).





[25]
See Perry v. State, 158 S.W.3d 438, 446-47 (Tex. Crim. App. 2004), cert.
denied, 126 S.Ct. 416 (2005). 





[26]
See, e.g., Escamilla v. State, 143 S.W.3d 814, 828 (Tex. Crim. App.
2004), cert. denied, 125 S.Ct. 1697 (2005).





[27]
Escamilla, 143 S.W.3d at 829; Chamberlain v. State, 998 S.W.2d
230, 238 (Tex. Crim. App. 1999).