# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-22-00506-CR

**Jason Ricardo Baez, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE 27TH DISTRICT COURT OF BELL COUNTY
### NO. 78574, THE HONORABLE JOHN GAUNTT, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury found appellant Jason Ricardo Baez guilty of first-degree murder and assessed his punishment at fifty years' confinement. *See* Tex. Penal Code § 19.02(b)(1), (c). In his sole issue, appellant contends that the trial court erred when it did not include within its jury instructions on the law of self-defense that an actor's belief that deadly force is immediately necessary is presumed to be reasonable. *See id.* § 9.32(b) (listing conditions when presumption applies). In its briefing, the State asks this Court to modify the judgment to add an affirmative deadly weapon finding. For the following reasons, we modify the judgment of conviction to add a deadly weapon finding and, as modified, affirm the judgment of conviction.

## BACKGROUND

In the middle of the day on February 28, 2018, appellant shot Lamar Roberson multiple times with a firearm. The shooting occurred in the street adjacent to the triplex where

appellant and his fiancée lived. Police and EMS responded to the scene and attempted to save Roberson's life, but he died from the gunshot wounds.

Shortly after the shooting occurred, appellant left the scene in a vehicle. Following a high-speed chase, the police were able to stop appellant's vehicle and arrest him. A few weeks later, appellant was indicted for causing the death of Roberson "by shooting [him] with a firearm, a deadly weapon."[1] The indictment included an enhancement paragraph alleging that appellant had been convicted in May 2008 of the felony offense of aggravated robbery with a deadly weapon.[2]

The witnesses at trial included Roberson's mother, eyewitnesses to the shooting, responding and investigating officers, the medical examiner, and appellant who testified in his own defense. The evidence established that appellant caused the death of Roberson by shooting him multiple times with a firearm. The dispositive question was whether appellant was acting in self-defense. Roberson's mother testified that Roberson was gay; that he and appellant seemed to be "into one another" and "to get along very well"; that she had seen them kiss; and that appellant called her shortly before the shooting and told her that Roberson "was trying to cause problems between [appellant] and his fiancée," that appellant "didn't like it," and that he "was going to smoke [Roberson]," meaning he "was going to shoot [Roberson]."

Among the eyewitnesses who testified at trial was a neighbor who lived next door to appellant and his fiancée. The neighbor testified that he heard "loud banging" on appellant's

---

[1] In their investigation, the police recovered a gun from the route of the high-speed chase, but it was not the murder weapon. At trial, appellant admitted that he had thrown the gun from his vehicle during the chase, but he testified that it belonged to his fiancée.

[2] During the punishment phase of trial, appellant testified that he served the full ten-year sentence.

apartment door and "angry yelling" and then saw a person, who was later identified as Roberson, walking away and screaming, "I'm going to get my gun and I'm going to come back and get you." The neighbor saw Roberson "continue into the street towards a car [he] didn't recognize that was sitting in the street." The neighbor then saw appellant "come around from the corner of the house from the back," "pull out a gun," "fire off a shot" at Roberson, and then walk to "the general direction of where [Roberson] had fallen and continue firing off rounds."

Another eyewitness who was sitting in a nearby car testified that she saw appellant shoot Roberson in the back and that Roberson "fell right in front of [her] car." Roberson "crawled a little ways," and appellant "shot him again." Roberson then "crawled around to the side" of the car, and appellant "shot him again." Another eyewitness testified that he "saw two men in the middle of the street"; that "[o]ne man was on his back and he had his hands in a defensive position, like, to shield his face"; and that "there was another man standing over him with a pistol in his hand" who shot the man on his back "four to five times, standing over him." The eyewitnesses testified consistently that Roberson appeared to be unarmed with nothing in his hands, and the police did not find a weapon on Roberson. The State's exhibits included photographs of the scene and video from a responding officer's dash cam showing Roberson lying in the middle of the street after he had been shot and video clips from police interviews of appellant following the shooting.

Testifying in his own defense, appellant admitted to being "a convicted felon" and to shooting Roberson but testified that he did so in self-defense. Appellant testified that he had known Roberson for about two months,[3] that Roberson had threatened him by phone, that

---

[3] In the video clips from the police interview, appellant confirmed that he met Roberson right after he was released from the penitentiary.

3

Roberson had "brandished" a pistol when he was "banging" on appellant's door just prior to the shooting but that it "[didn't] work," that he saw Roberson moving toward a car with two people where he thought Roberson was going to get another gun, and that he shot Roberson in self-defense because "I'm thinking he's fixing to shoot with that gun that he had on him." He also testified that he shot Roberson because he "[saw Roberson] go grab the pistol again and go to turn like this (indicating) to shoot me with it."

Appellant also called an individual who was confined in county jail with him. The individual testified that he knew Roberson and appellant, that he had seen Roberson with a gun, that Roberson "knew his way around a firearm," that Roberson had threatened appellant because appellant owed him money, that appellant and his family "were in danger of getting killed," that Roberson had a gun on him when the shooting occurred, that the individual had "removed the firing pin" from Roberson's gun so that it "was disabled" on the morning before the shooting, that Roberson's "associates" recovered the gun after Roberson was shot, that they then drove off, and that the individual was paid to take the gun apart and dispose of it, which he did. According to the individual, appellant was "the target of a murder setup." The defense's exhibits included photographs of Roberson holding a pistol in each hand.

In its charge to the jury, the trial court instructed the jury on the law of self-defense:

> It is a defense to prosecution that the conduct in question is justified by the law of self-defense. Under that law, a person is justified in using force against another when and to the degree the actor reasonably believes the force is immediately necessary to protect the actor against the other's use or attempted use of unlawful force. "Actor" means a person whose criminal responsibility is in issue in a criminal action.

4

A person is justified in using deadly force against another if the actor is justified in using force, and when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force, or to prevent the other's imminent commission of murder . . . .

"Reasonable belief" means a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant.[4]

*See* Tex. Penal Code § 9.32 (stating circumstances when person is justified in using deadly force in defense of person). Neither party objected to the charge, and the jury found appellant guilty of murder "as charged in the indictment."

During the trial's punishment phase, appellant stipulated to prior judgments of conviction and pleaded true to the enhancement paragraph. The judgments of conviction, including the May 2008 judgment of conviction for aggravated robbery with a deadly weapon, were admitted as exhibits. The jury found that appellant caused the death of Roberson under the immediate influence of sudden passion arising from adequate cause, *see id.* § 19.02(d) (authorizing defendant to raise "the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause" and providing that if defendant proves issue, offense is second-degree felony), and sentenced him to fifty years' confinement, *see id.* § 12.42 (addressing punishment range for repeat and habitual felony offenders). The trial court thereafter signed its judgment of conviction. This appeal followed.

---

    [4] In its instruction to the jury on the law of self-defense, the trial court also included definitions of "deadly force," "bodily injury," and "serious bodily injury" and instructed the jury that "[t]he use of force or deadly force against another is not justified in response to verbal provocation alone."

## ANALYSIS

**Jury Charge**

In his sole issue, appellant contends that the trial court was required sua sponte to give an instruction regarding the presumption of reasonableness under Section 9.32 of the Texas Penal Code as the law applicable to the case and that the court's failure to do so caused egregious harm such that he was denied a fair and impartial trial. *See id.* § 9.32(a) (addressing when deadly force against another is justified in defense of person), (b) (addressing when actor's belief that deadly force is immediately necessary is presumed to be reasonable).

We review alleged jury charge error in two steps: first, we determine whether error exists; if so, we then evaluate whether sufficient harm resulted from the error to require reversal. *Arteaga v. State*, 521 S.W.3d 329, 333 (Tex. Crim. App. 2017); *Ngo v. State*, 175 S.W.3d 738, 743 (Tex. Crim. App. 2005). The degree of harm required for reversal depends on whether the jury charge error was preserved in the trial court. *Marshall v. State*, 479 S.W.3d 840, 843 (Tex. Crim. App. 2016); *see Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g) (setting forth procedure for appellate review of claim of jury charge error). Without a timely objection, which is the case here, reversal is required upon a showing of egregious harm. *Marshall*, 479 S.W.3d at 843; *Ngo*, 175 S.W.3d at 743–44.

The trial court instructed the jury that a person is justified in using deadly force against another if the actor is justified in using force, and "when and to the degree he reasonably believes the deadly force is immediately necessary to protect himself against the other's use or attempted use of unlawful deadly force, or to prevent the other's imminent commission of murder" and defined "reasonable belief" to mean "a belief that would be held by an ordinary and prudent person in the same circumstances as the defendant." But the trial court did not include a

presumption-of-reasonableness instruction—that the actor's belief that deadly force against another is immediately necessary is presumed to be reasonable. *See* Tex. Penal Code § 9.32(a), (b). Appellant contends that the trial court erred because the three conditions for the presumption of reasonableness to apply were satisfied. *See id.* § 9.32(b).

Relevant here, among the three conditions for the presumption of reasonableness to apply, the actor must not have been "otherwise engaged in criminal activity, other than a Class C misdemeanor that is a violation of a law or ordinance regulating traffic at the time the force was used." *See id.* § 9.32(b)(3).[5] A presumption that favors a defendant must "be submitted to the jury 'if there is sufficient evidence of the facts that give rise to the presumption.'" *Morales v. State*, 357 S.W.3d 1, 7 (Tex. Crim. App. 2011) (quoting Tex. Penal Code § 2.05(b)(1))). When the trial court "is satisfied that the evidence as a whole clearly

---

[5] The other conditions under Section 9.32(b) for the presumption to apply are that the actor:

> (1) knew or had reason to believe that the person against whom the deadly force was used:
>
> (A) unlawfully and with force entered, or was attempting to enter unlawfully and with force, the actor's occupied habitation, vehicle, or place of business or employment;
>
> (B) unlawfully and with force removed, or was attempting to remove unlawfully and with force, the actor from the actor's habitation, vehicle, or place of business or employment; or
>
> (C) was committing or attempting to commit an offense described by Subsection (a)(2)(B); [and]
>
> (2) did not provoke the person against whom the force was used.

Tex. Penal Code § 9.32(b)(1)–(2); *see id.* § 9.32(a)(2)(B) (addressing when person "is justified in using deadly force against another" to prevent other's imminent commission of specified crimes).

7

precludes a finding beyond a reasonable doubt of the presumed fact," the trial court is not required to submit the presumption to the jury. *Id.* The dispositive question then is whether the evidence was sufficient to support or, viewed as a whole, clearly precluded a finding beyond a reasonable doubt that appellant was not otherwise engaged in criminal activity. *See id.*; *see also* Tex. Penal Code § 9.32(b)(3).

In this case, the evidence at trial conclusively established that appellant was "otherwise engaged in criminal activity" when he used deadly force by shooting Roberson because the evidence established that he was committing the offense of unlawful possession of a firearm by a felon. *See* Tex. Penal Code § 9.32(b)(3); *see also id.* § 46.04(a). A person who is a convicted felon commits the offense of unlawful possession of a firearm: (i) if he "possesses a firearm" after conviction and before the fifth anniversary of his release from confinement following the conviction or (ii) if after the fifth anniversary of the person's release from confinement following conviction of a felony, "he possesses a firearm" "at any location other than the premises at which the person lives." *See id.* § 46.04(a); *see also id.* § 46.04(e) (stating that offense under Subsection (a) is third-degree felony).

Appellant admitted in his testimony that he was a convicted felon, and the evidence showed that he was convicted in May 2008 of the felony offense of aggravated robbery with a deadly weapon and sentenced to ten years' confinement.[6] Appellant also testified that he had known Roberson for two months, and during his interview with the police, he agreed that he met Roberson shortly after being released from confinement. This evidence established that his possession of a firearm on February 28, 2018, was unlawful because that date was after his

---

[6] The judgment form reflects that appellant's sentence commenced in May 2008.

May 2008 felony conviction but before the fifth anniversary of his release from confinement following that conviction.[7] *See id.* § 46.04(a)(1).

Further, even if the date of the shooting was after the fifth anniversary of appellant's release from confinement following his May 2008 conviction, the evidence established that appellant followed Roberson into the street, where he shot Roberson multiple times with a firearm. This evidence conclusively established that at the time appellant used deadly force, appellant possessed a firearm at a "location other than the premises at which [he] lives." *See id.* § 46.04(a)(2); *Shepperd v. State*, 586 S.W.2d 500, 504 (Tex. Crim. App. 1979) (upholding jury finding that appellant was guilty of unlawful possession of firearm by felon, considering phrase "away from the premises where he lives," and determining that "adjacent parking lot is not part of the premises where one lives"); *see also Johnson v. State*, 401 S.W.2d 837, 838 (Tex. Crim. App. 1966) (stating that "[i]t was shown that when the officers arrived upon the scene, the deceased was lying partially in the street and the driveway *in front of* the premises" (emphasis added)); *Sharif v. State*, 640 S.W.3d 636, 644–45 (Tex. App.—Houston [14th Dist.] 2022, no pet.) (concluding, in context of section 46.04 of Texas Penal Code, that trial court's definition in jury charge of "premises" as "building or a portion of building" "almost exactly match[ed] commonly understood meaning of the word").

Because the evidence conclusively established that appellant was "otherwise engaged in criminal activity"—the unlawful possession of a firearm by a felon—at the time that he used deadly force, there was not sufficient evidence of facts that would give rise to the

---

[7] During the sentencing phase of trial, appellant confirmed that he served the full sentence for his May 2008 conviction, and the judgment for the May 2008 conviction reflects that he had about seven months of time credit at the time that the judgment was signed. This evidence supports that he was released from confinement in 2017.

presumption of reasonableness. *See* Tex. Penal Code §§ 2.05(b)(1), 9.32(b)(3); *Morales*, 357 S.W.3d at 7; *Reyna v. State*, 597 S.W.3d 604, 606 (Tex. App.—Houston [14th Dist.] 2020, no pet.) (concluding that appellant was not entitled to presumption-of-reasonableness instruction because record conclusively established that appellant was otherwise engaged in criminal activity—dealing and possession of cocaine—at time that he used deadly force). It follows that the trial court would not have erred in concluding that "the evidence as a whole clearly precludes a finding beyond a reasonable doubt" that the presumption of reasonableness applied. *See Morales*, 357 S.W.3d at 7.

Thus, we conclude that the trial court did not err in omitting a presumption-of-reasonableness instruction under Section 9.32(b) of the Texas Penal Code and overrule appellant's sole issue. *See* Tex. Penal Code § 9.32(b). Further, because we conclude that the trial court did not err, we do not address appellant's arguments concerning harm. *See* Tex. R. App. P. 47.1 (requiring appellate courts to issue "written opinion that is as brief as practicable but that addresses every issue raised and necessary to final disposition of the appeal").

**Modification to Judgment**

In its brief, the State requests that this Court modify the judgment to reflect the jury's affirmative deadly weapon finding.

This Court has authority to modify incorrect judgments when the necessary information is available to do so. *See id.* R. 43.2(b); *Bigley v. State*, 865 S.W.2d 26, 27–28 (Tex. Crim. App. 1993). Here the jury found appellant guilty of murder "as charged in the indictment," and the indictment alleged that appellant caused the death of Roberson by shooting him with "a firearm, a deadly weapon." Thus, the jury implicitly found that appellant used a

10

deadly weapon in committing murder. *See Duran v. State*, 492 S.W.3d 741, 746–47 (Tex. Crim. App. 2016) (observing that entry of deadly-weapon finding is appropriate when "the indictment specifically allege[s] a 'deadly weapon' was used (using the words 'deadly weapon') and the defendant [is] found guilty 'as charged in the indictment'").

Because the necessary information is available here, we modify the judgment of conviction to delete and replace "N/A" with "Yes, a firearm" in the space designated for "Findings on Deadly Weapon."

## CONCLUSION

For these reasons, we modify the judgment as stated above and, as modified, affirm the trial court's judgment of conviction.

_____

Rosa Lopez Theofanis, Justice

Before Chief Justice Byrne, Justices Triana and Theofanis

Modified and, as Modified, Affirmed

Filed:   August 25, 2023

Do Not Publish

11